1
2
3
4
5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GENE MCKINNEY,<br><br>              Plaintiff,<br><br>     v.<br><br>FRESNO COUNTY SHERIFF'S OFFICE, *et al.*,<br><br>              Defendants. | Case No. 1:22-cv-00475-ADA-EPG<br><br>FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION TO DISMISS<br><br>(ECF Nos. 5, 19)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Plaintiff Michael Gene McKinney, proceeding *pro se*, filed a complaint on April 21, 2022, against Defendants Fresno County Sheriff's Office, Fresno County Sheriff Margaret Mims, and Fresno County Sheriff's Captain Ryan Hushaw. (ECF No. 1). Plaintiff alleges that Defendants denied him procedural due process when he applied for a California concealed carry license. Defendants move to dismiss this case with prejudice for failure to state a claim upon which relief can granted. For the reasons explained below, the Court will recommend that Defendants' motion to dismiss be denied.

## I.       BACKGROUND

### A.       The Complaint

The civil cover sheet attached to the complaint identifies this as a civil rights action. Plaintiff alleges that he applied for a concealed carry license at the Fresno County Sheriff's Office in 2018 but his application was denied based on his "criminal record and psychiatric profile." He did not appeal the decision but reapplied for a license in September 2021.

1

This application was denied via email on January 10, 2022, based on the following reasons: "Criminal History 26150 PC, and Moral Character 26150(a)(l) PC."[1] On January 11, 2022, Plaintiff mailed a request to appeal the decision, which he addressed to the administrative captain "at the CCW unit."

On February 17, 2022, Plaintiff received an email telling him that his application was denied for the following reasons: "Withheld/False Information on Application 26180 PC, Criminal History 26150 PC."[2] The email stated that Plaintiff could appeal the decision by mailing an appeal request to the administrative captain. On February 22, 2022, Plaintiff mailed his appeal request.

In late March 2022, a person who represented themselves "as an employee at the CCW unit" called Plaintiff to tell him that his appeals were denied. On April 8, 2022, Plaintiff mailed a letter to the administrative captain, stating that notice by phone or email "would not suffice as formal denial of the appeals."

Plaintiff asserts that "Defendants deprived [him of his] right to due process by not allowing his participation in the appeal" and he "was not presented an opportunity to review the information used in determining the claims stated in the denial or given [the] opportunity to offer rebuttal testimony or evidence to disprove the claims given as reasons for the decision being appealed."

As for relief, Plaintiff asks the Court to: "compel [] [D]efendants to establish a process that offers a person whose application for a permit to carry a concealed weapon is denied an opportunity to participate in an unbiased appeal process like that prescribed and protected by the judiciary"; "order the [D]efendant[s] to allow [him] to participate in a court approved appeal process, once established, that will allow him to appear at the appeal and present

---

[1] While not explained in the complaint, the inclusion of "26150" in the reasons for the denial of Plaintiff's application likely refers to California Penal Code § 26150, which sets out the requirements to obtain a concealed carry license, in part, requiring the applicant to prove he or she is "of good moral character." § 26150(a)(1).

[2] The inclusion of "26180" in the reasons for the denial of Plaintiff's application likely refers to California Penal Code § 26180, which provides that the filing of an application containing a knowingly false statement is a misdemeanor or felony, depending on the type of the false information provided.

testimony and evidence to rebut information contained in the reasons for the denial of a CCW permit application"; "order the Defendants to pay any monetary damage [he] incurs as result of the Defendants['] actions and [to] reimburse the costs of the Plaintiff's search for relief"; and, order "[a]ny further relief which the [C]ourt or a jury may deem appropriate."

**B.    Procedural History**

On June 2, 2022, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(5)-(6), arguing that Plaintiff failed to properly serve them with process and failed to state a claim upon which relief could be granted because he has no liberty or property interest in a concealed carry license so as to entitle him to procedural due process during the application process. (ECF No. 5). On June 28, 2022, Plaintiff objected to the dismissal, but presented no substantive argument. (ECF No. 9). On June 30, 2022, Defendants filed a notice (ECF No. 10) of supplemental authority, the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022), which held "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."

On August 24, 2022, District Judge Ana de Alba was reassigned to this case, and shortly thereafter, ordered the parties to file a joint report addressing, among other topics, whether the motion to dismiss was "still at issue for the parties." (ECF No. 12). On September 12, 2022, this matter was referred to the undersigned for preparation of findings and recommendations. (ECF No. 13).

On September 13, 2022, the parties filed a joint report in response to Judge de Alba's order, noting that they had stipulated to proper service, and thus Defendants' argument as to insufficient service was "moot and no longer require[d] a ruling." (ECF No. 14, p. 2). Further, the parties stated that they were going to confer about resolving additional issues.

On September 14, 2022, the Court ordered the parties to file a joint report addressing whether they were able to resolve additional issues and whether briefing should be ordered pursuant to *Bruen*. (ECF No. 15). On October 13, 2022, the parties filed a joint status report, stating that they had not been able to resolve any additional issues and believed briefing should

1  be ordered regarding *Bruen*. (ECF No. 17).

2      The Court set a briefing schedule, and Defendants timely filed a supplemental brief on

3  October 28, 2022, arguing that *Bruen* affects the reasoning underlying their motion to dismiss

4  and withdrawing arguments inconsistent with that case. (ECF No. 19). However, Defendants

5  maintain that Plaintiff's case should be dismissed because he is not entitled to a specific

6  procedure like that offered by courts. Additionally, they argue that Plaintiff is not entitled to the

7  Second Amendment's protection. On November 10, 2022, Plaintiff timely filed an opposition,

8  arguing that *Bruen* does not affect the motion to dismiss and that due process requires that he

9  be given the chance to rebut the reasons for the denial of his concealed carry application. (ECF

10  No. 20, p. 8). Defendants chose not to file an optional reply by the November 21, 2022 deadline

11  set by the Court's order. (ECF No. 18).

12      With briefing being complete, the Court concludes that this matter would not benefit

13  from oral argument and is thus ripe. *See* Local Rule 230(g) (providing that a Court may address

14  a motion on the briefs without oral argument).

15  **II.      MOTION TO DISMISS**

16          **A.      Summary of the Parties' Arguments**

17      Defendants argue that Plaintiff has no constitutionally protected right to procedures, like

18  those used by courts, during the concealed-carry application process.[3] (ECF No. 19, p. 6)

19  (quoting ECF No. 1, p. 2). Additionally, Defendants argue that the facts contained in the

20  complaint reveal that he is not entitled to the Second Amendment's protection.

21      Plaintiff's opposition indicates that the interest at issue is his obtaining a concealed

22  carry license. He states that he would not have gone through the application process "if he did

23  not have a reasonable expectation of receiving the permit." (ECF No. 20, p. 7). Additionally, he

24  argues that due process requires that he be provided the "opportunity to present rebuttal

25  evidence, testimony, and witnesses" to contest the bases his application was denied. (*Id.* at 8).

26  \\\

27

28

---

[3] The Court does not address the arguments from Defendants' motion to dismiss that are now moot.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.   Standards

#### 1.   Motion to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (internal citation and quotation marks omitted).

 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a claim must be facially plausible, *i.e.*, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not akin to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

#### 2.   Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.*, 683

5

F.2d 1229, 1233 (9th Cir. 1982). A "procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest in obtaining the permit; and (2) a denial of adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998).

Regarding the first element, property interests include things like the ownership of money or real estate, although they extend beyond this. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571-72 (1972). While liberty interests have historically been understood to encompass the "freedom from bodily restraint," it also has broader definitions. *Id.* at 572; *see Washington v. Glucksberg*, 521 U.S. 702, 719 (1997) ("The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint."). Liberty interests include "the specific freedoms protected by the Bill of Rights" and fundamental rights, *e.g.*, the right to marry. *Washington*, 521 U.S. at 720[4] (internal quotation marks and citations omitted).

Regarding the second element, "[t]he essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (internal citation and quotations marks omitted). There need not be any single set of procedures to ensure due process—"[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard . . . to insure that they are given a meaningful opportunity to present their case." *Id.* at 349 (internal citation and quotations marks omitted); *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (noting "there are no 'hard and fast' rules for determining the requisite timing and adequacy of pre- and post-deprivation procedures").

> [The] identification of the specific dictates of due process generally requires
> consideration of three distinct factors: First, the private interest that will be
> affected by the official action; second, the risk of an erroneous deprivation of

---

[4] While *Washington* discussed liberty interests in the context of substantive due process, "[a] threshold requirement to a substantive *or procedural due process claim* is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (emphasis added).

such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

### C.    Analysis

#### 1.    Interest at stake

Starting with the interest at stake, *Bruen* is instructive here. Building off prior decisions—*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) and *D.C. v. Heller*, 554 U.S. 570 (2008)—that recognized the right of law-abiding citizens to possess a handgun in the home for self-defense under the Second and Fourteenth Amendments, the Supreme Court held that individuals likewise have the "right to carry a handgun for self-defense outside the home."[5] *Bruen*, 142 S. Ct. at 2122.

In light of *Bruen* and the complaint's allegation that Plaintiff wishes to obtain a California concealed carry permit, the Court concludes that the interest at stake is Plaintiff's interest in the right to publicly bear arms. *See Bruen*, 142 S. Ct. at 2142 ("At the very least, we cannot conclude from this historical record that, by the time of the founding, English law would have justified restricting *the right to publicly bear arms* suited for self-defense only to those who demonstrate some special need for self-protection.") (emphasis added). Notably, in considering procedural due process concerns in comparable contexts, Courts have similarly defined the interest at issue. *See Erdelyi v. O'Brien*, 680 F.2d 61, 63 (9th Cir. 1982) (considering whether application for California concealed carry license had "a property or liberty interest in obtaining an initial license to carry a concealed weapon"); *see United States v. Rehlander*, 666 F.3d 45, 48 (1st Cir. 2012) ("Although the right established in *Heller* is a qualified right . . . the right to possess arms (among those not properly disqualified) is no longer something that can be withdrawn by government on a permanent and irrevocable basis without

---

[5] As the Supreme Court noted in *Bruen*, "[s]trictly speaking, [a state] is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second," because the protections of the Second Amendment are made applicable to the states through the Fourteenth Amendment. 142 S. Ct. at 2137. While the Court recognizes this distinction, for simplicity's sake, it refers to "the Second Amendment's protection" throughout this order.

7

due process."); *United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 WL 4352482, at *11 (W.D. Tex. Sept. 19, 2022) ("In line with procedural concerns, the Court notes in passing that the expansion of gun rights by the Supreme Court in *Bruen* might also implicate procedural due process under the Fifth Amendment. . . . If the right to keep and bear arms inside and outside the home is so clear, removing that right would likely require the same constitutional procedural safeguards that the Supreme Court has bestowed on other rights.); *Doe I v. Evanchick*, 355 F. Supp. 3d 197, 217 (E.D. Pa. 2019) ("From *Heller* and *McDonald*, it is clear that the right to bear arms is a protected liberty interest.").

### 2.     Denial of adequate procedural protections

Turning to whether Plaintiff was denied adequate procedural protections, the Court considers the interest at issue, the risk of erroneous deprivation by the procedures used and the value of alternative procedural safeguards, and the Government's interest regarding and alternative procedures. *Mathews*, 424 U.S. at 335.

Defendants characterize the interest at issue as Plaintiff's right to a particular procedure. (ECF No. 19, p. 6). However, Plaintiff's request for court-like procedures is just one of the alternative forms of relief he requests—it is not his procedural due process claim, which is premised on his interest in publicly bearing arms. *See* Fed. R. Civ. P. 45(c) (noting that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). Importantly, at this stage, the Court need not determine exactly what process is due.

Defendants also argue that "there is no suggestion the Fresno County Sheriff's application process as a whole fails to protect" Plaintiff's interest in publicly bearing arms. (ECF No. 19, p. 6). Notably, Defendants present no developed explanation for how the current application procedures comport with due process.  Regardless, Plaintiff's complaint alleges that he was not given the opportunity to review the information used to deny his application or given the opportunity to offer rebuttal testimony or evidence. (ECF No. 1, p. 1). Caselaw indicates that similar denials violate due process. *See Zerezghi v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 804 (9th Cir. 2020) (concluding that the "BIA violated due

process by relying on undisclosed evidence that [plaintiffs] did not have an opportunity to rebut").

Defendants also contend that, "[a]s to the second factor, the complaint alleges nothing to suggest a more formal appeal to the Fresno County Sheriff would have resulted in a different outcome" because he was not entitled to the Second Amendment's protection based on the reasons his application was denied—Plaintiff's "criminal history," "moral character," "with[olding]/[presenting] false information on application," and his "psychiatric profile."[6] (ECF No. 19, p. 5-6) (capitalization omitted). However, to the extent that this argument advocates for an outcome-determinative approach to due process, "[i]t is process that the procedural due process right protects, not the outcome." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013).

Moreover, while the Supreme Court has noted that its Second Amendment jurisprudence "should [not] be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," *Heller*, 554 U.S. at 626, Defendants improperly assume facts not in the complaint. Namely, they assume that Plaintiff has a criminal history and mental illness, and that such are sufficient bases to deny him the Second Amendment's protection. *Cf. Bruen*, 142 S. Ct. at 2126 ("To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."). Informative here, the Sixth Circuit has concluded that "*Heller*'s presumption of lawfulness should not be used to enshrine a permanent stigma on anyone who has ever been committed to a mental institution for whatever reason." *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 688 (6th Cir. 2016). Likewise, it is improper to dismiss this case without knowing the facts underlying the reasons for the denial of Plaintiff's application and determining whether they render unavailable the Second Amendment's protection. *See Kaur v. Holder*, 561 F.3d 957, 962 (9th Cir. 2009) ("[The] use of the secret

---

[6] Plaintiff's complaint does not state that his 2021 application was denied based on his "psychiatric profile," but his opposition indicates that this may have been a basis.

evidence without giving [a petitioner] a proper summary of that evidence was fundamentally unfair and violated her due process rights.").

Lastly, Defendants argue that, "[a]s to the third factor, there can be no doubt that adding a formal appeal involving testimony and rebuttal evidence 'like that prescribed and protected by the judiciary' for every application to carry a concealed weapon would be significant." (ECF No. 19, p. 7) (internal citation omitted). This argument improperly focuses on one request for relief in Plaintiff's complaint. At this stage of the case, the Court need only determine whether Plaintiff has sufficiently alleged a procedural due process claim, which he has done by alleging that he was not advised of the specific bases supporting the denial of his application and not given the opportunity to contest those reasons. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."); *see Baird v. Becerra*, No. 2:19-CV-00617-KJM-AC, 2020 WL 5107614, at *10 (E.D. Cal. Aug. 31, 2020) ("Though it is unclear from plaintiffs' briefing and oral argument what procedure plaintiffs believe should be afforded, the complaint's general allegations suggest the claim is based on the lack of a meaningful 'administrative appeal process available for challenging [the sheriffs'] denial of [plaintiffs'] applications for an open carry license.' The court finds plaintiffs have sufficiently stated a claim for a violation of procedural due process at this stage.") (internal citation to record omitted, alterations in original). The complaint is not subject to dismissal simply become one proposed form of procedures listed in the request for relief would be burdensome to Defendants.

Accordingly, for purposes of the motion to dismiss, the Court concludes that Plaintiff has stated a procedural due process claim.

## III.    CONCLUSION AND RECOMMENDATIONS

For the reasons given above, IT IS RECOMMENDED that Defendants' motion to dismiss (ECF Nos. 5, 19) be denied and this case be referred back to the undersigned for further proceedings.

These Findings and Recommendations will be submitted to the United States District

Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within fourteen (14) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __December 20, 2022__          __/s/ Erica P. Grosjean__

UNITED STATES MAGISTRATE JUDGE