1  DANIEL C. CEDERBORG
     County Counsel – State Bar No. 124260
2  CAVAN M. COX II
     Deputy County Counsel – State Bar No. 266793
3  FRESNO COUNTY COUNSEL
4  2220 Tulare Street, 5th Floor
   Fresno, California   93721
5  Telephone: (559) 600-3479
   Facsimile: (559) 600-3480
6  Email: cacox@fresnocountyca.gov
7
8  Attorneys for Defendants,
   Fresno County Sheriff's Office,
9  Fresno County Sheriff Margaret Mims, and
   Fresno County Sheriff's Captain Ryan Hushaw
10

11                  IN THE UNITED STATES DISTRICT COURT

12                     EASTERN DISTRICT OF CALIFORNIA

13

14  MICHAEL GENE MCKINNEY,              Case No. 1:22-cv-00475 KES-EPG
15                Plaintiff,
16                                      **DEFENDANTS' REQUEST FOR JUDICIAL**
17         v.                           **NOTICE IN SUPPORT OF MOTION**
                                        **SUMMARY JUDGMENT**
18  FRESNO COUNTY SHERIFF'S OFFICE;
    and; FRESNO COUNTY SHERIFF
19  MARGARET MIMS; and; FRESNO
    COUNTY SHERIFF'S CAPTAIN RYAN       Judge: Hon. Kirk E. Sheriff
20  HUSHAW,
                                        (Magistrate Judge: Hon. Erica P. Grosjean)
21                Defendants.

22

23  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

24         **PLEASE TAKE NOTICE** that pursuant to Federal Rules of Evidence, Rule 201,

25  Defendants FRESNO COUNTY SHERIFF'S OFFICE, FRESNO COUNTY SHERIFF

26  MARGARET MIMS, and FRESNO COUNTY SHERIFF'S CAPTAIN RYAN HUSHAW

27  (collectively "Defendants") respectfully request that this Court take judicial notice of the

28  following adjudicative facts and exhibits in       connection with their Motion for Summary

                                           1

Judgment, filed herewith, and take judicial notice of the information contained in the exhibits attached hereto:

**Exhibit 1** is a true and correct copy of **California Senate Bill No. 2 (SB-2), legislative year 2023-2024,** approved by the California Governor and filed with the California Secretary of State on September 26, 2023. This document is also a public record may be accessed or downloaded from the California legislative information website at the following web address: https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202320240SB2. SB-2 was passed into law on September 26, 2023, and became effective January 1, 2024. See Cal. Const., art. IV, § 8, subd. (c)(2) (legislation effective January 1 the year following enactment); *People v. Camba*, 50 Cal.App.4th 857, 865 (1996).

This document is a proper subject for judicial notice because it is a legislative fact, and Courts may properly take judicial notice of legislative history, when relevant. See *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 (9th Cir. 2013); *Silvester v. Harris*, 41 F.Supp.3d 927, 936 (E.D. Cal. 2014) (rev'd and remanded on other grounds). It may also be judicially noticed as an adjudicative fact pursuant to Federal Rules of Evidence, Rule 201(b)(1) and (2) because a court may also take judicial notice of "matters of public record." *Id.*, quoting *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

Dated: January 29, 2025                    Respectfully submitted,

                                           DANIEL C. CEDERBORG
                                           County Counsel

                                           /s/ Cavan M. Cox II
                              By:          _____
                                           Cavan M. Cox II
                                           Deputy County Counsel
                                           Attorneys for Defendants

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No. 1:22-cv-00475 KES-EPG

# EXHIBIT 1

California
LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

**SB-2 Firearms.** (2023-2024)

SHARE THIS:                                       Date Published: 09/26/2023 09:00 PM

**Senate Bill No. 2**

CHAPTER 249

An act to amend Sections 171b, 171d, 171.5, 171.7, 626.9, 25610, 25850, 26150, 26155, 26165, 26170, 26175, 26185, 26190, 26195, 26200, 26205, 26210, 26220, 26225, 29805, and 30370 of, to add Sections 25350, 26162, 26206, 26230, and 26235 to, and to repeal and add Section 26202 of, the Penal Code, relating to firearms.

[ Approved by Governor  September 26, 2023. Filed with Secretary of State September 26, 2023. ]

LEGISLATIVE COUNSEL'S DIGEST

SB 2, Portantino. Firearms.

Existing law prohibits a person from carrying a concealed firearm or carrying a loaded firearm in public. Existing law authorizes a licensing authority, as specified, if good cause exists for the issuance, and subject to certain other criteria including, among other things, the applicant is of good moral character and has completed a specified course of training, to issue a license to carry a concealed handgun or to carry a loaded and exposed handgun, as specified. Under existing law, the required course of training for an applicant is no more than 16 hours and covers firearm safety and laws regarding the permissible use of a firearm.

This bill would require the licensing authority to issue or renew a license if the applicant is not a disqualified person for the license and the applicant is at least 21 years of age. The bill would remove the good character and good cause requirements from the issuance criteria. Under the bill, the applicant would be a disqualified person if they, among other things, are reasonably likely to be a danger to self, others, or the community at large, as specified. This bill would add the requirement that the applicant be the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm capable of being concealed upon the person. This bill would change the training requirement to be no less than 16 hours in length and would add additional subjects to the course including, among other things, the safe storage and legal transportation of firearms. The bill would require an issuing authority, prior to that issuance, renewal, or amendment to a license, if it has direct access to the designated department system to determine if the applicant is the recorded owner of the pistol, revolver, or other firearm. The bill would require an issuing authority without access to that system to confirm the ownership with the sheriff of the county in which the agency is located. By requiring local agencies to issue licenses for concealed firearms, this bill would create a state-mandated local program.

The bill would require a licensing authority to provide the applicant notice if a new license or license renewal is denied or revoked. If an application is denied or a license is revoked based on a determination that the applicant is a disqualified person, the bill would permit the applicant to request a hearing to challenge the license denial or revocation, and require the licensing authority to inform the applicant of the ability to seek a hearing. If a new

license to be denied or revoked for any reason, and would also authorize the applicant to seek a writ of mandate from a superior court within 30 days of receipt of notice of denial or revocation, and require the licensing authority to inform the applicant of the ability to seek a writ of mandate. By imposing new duties on local licensing authorities, this bill would create a state-mandated local program.

Existing law requires an agency issuing a license described above to set forth specified information on the license, including, among other things, the licensee's name, occupation, and reason for desiring a license to carry the weapon.

This bill would revise that information to include, among other things, the licensee's driver's license or identification number, fingerprints, and information relating to the date of expiration of the license, and would remove the requirement that the license detail the reason for desiring a license to carry the weapon.

Existing law requires an applicant for a license described above to provide fingerprints, as specified. Existing law exempts an applicant from this requirement if they have previously applied to the same licensing authority and the applicant's fingerprints have previously been forwarded to the department, as specified, and instead requires that authority to note data that would provide positive identification in the files of the department, on the copy of any subsequent license submitted to the department.

This bill would require the licensing authority to submit fingerprint images and related information to the department for each applicant applying for a new or renewal license. The bill would require the department to notify the licensing authority if the department is unable to ascertain, among other things, the final disposition of an arrest or criminal charge under state or federal law that would prohibit the person from possessing, receiving, owning, or purchasing a firearm. This bill would prohibit a license from being issued or renewed unless the department reports to a licensing authority that the applicant is eligible to possess, receive, own, or purchase a firearm.

Existing law requires a licensing authority to charge an additional fee in an amount equal to reasonable processing costs for a new license. Existing law also prohibits a licensing authority from imposing, among other things, a requirement or condition that an applicant pay additional funds or obtain liability insurance.

This bill would authorize a licensing authority to charge the additional processing cost fee for a license renewal and would permit the licensing authority to collect the first 50% of the fee upon filing of the application. The bill also removes the prohibition on licensing authority requirements for additional fees or liability insurance.

Existing law requires that licenses and applications for licenses be uniform throughout the state, and to be submitted upon forms prescribed by the Attorney General. When revising the standard application form for licenses, existing law requires the Attorney General to convene a committee to review and revise the existing application form. Existing law requires the Attorney General to develop a uniform license that may be used as indicia of proof of licensure throughout the state. Existing law also requires the committee to convene to review and revise the design standard for a uniform license.

This bill would authorize the Attorney General to revise the standard form for licenses and the design standard if the committee does not revise the form or issue a design standard within a specified time period.

Under existing law, it is a crime to bring a firearm into a state or local building, and makes it a crime to bring a loaded firearm into, or upon the grounds of, any residence of the Governor, any other constitutional officer, or Member of the Legislature. Existing law exempts a licensee from that prohibition if, among other things, the licensee has a valid license to carry the firearm.

This bill would remove those exemptions, except as specified. The bill would make it a crime to bring an unloaded firearm into, or upon the grounds of, any residence of the Governor, any other constitutional officer, or Member of the Legislature. The bill would also prohibit a licensee from carrying a firearm to specified locations, including, among other places, a building designated for a court proceeding and a place of worship, as defined, with specific exceptions. By expanding the scope of an existing crime, the bill would impose a state-mandated local program.

Existing law prohibits a person from knowingly possessing a firearm in a sterile area of an airport, passenger vessel terminal, or public transit facility, as defined.

This bill would additionally prohibit a person from knowingly possessing a firearm in any building, real property, or parking area under the control of an airport or passenger vessel terminal, as specified. By expanding the scope of an existing crime, the bill would impose a state-mandated local program.

Existing law makes it a crime to possess a firearm in a place that the person knows, or reasonably should know, is a school zone. Existing law defines a school zone as an area in, or on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive, or within a distance of 1,000 feet from the grounds of the public or private school. Existing law provides exceptions to that crime, including if a person with a valid concealed carry license who is carrying the firearm described in the license in an area that is not in, or on the grounds of, a public or private school and when a firearm is an unloaded pistol, revolver, or other firearm capable of being concealed on the person and is in a locked container or within the locked trunk of a motor vehicle.

This bill would revise the exception for a person who has a valid concealed carry license to permit them to carry a specified firearm in an area that is not within any building, real property, or parking area under the control of a public or private school, or on a street or sidewalk immediately adjacent to a building, real property, or parking area under the control of that public or private school, as specified.

Existing law requires a licensing authority to revoke a license to carry a firearm if the licensing authority is notified by the department or the licensing authority determines that a licensee is prohibited from possessing, receiving, owning, or purchasing a firearm under state or federal law.

This bill would also require a licensing authority to revoke a license if, among other things, a licensee has provided inaccurate or incomplete information on their application for a new license or license renewal.

Existing law authorizes a licensing authority to impose reasonable restrictions on the time, place, manner, and circumstances when a licensee may carry a firearm capable of being concealed.

While carrying a firearm, this bill would prohibit a licensee from, among other things, consuming an alcoholic beverage or controlled substance and from falsely representing that the licensee is a peace officer.

The bill would authorize the department to adopt emergency regulations to implement the concealed firearm licensing system, as specified.

This bill would make conforming changes.

The bill would additionally make various findings and declarations of the Legislature.

The bill would state that its provisions are severable.

This bill would incorporate additional changes to Section 29805 of the Penal Code proposed by SB 368 to be operative only if this bill and SB 368 are enacted and this bill is enacted last. This bill would also incorporate additional changes to Section 30370 of the Penal Code proposed by AB 135 and SB 135 to be operative only if this bill and either of those bills are enacted and this bill is enacted last.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that with regard to certain mandates no reimbursement is required by this act for a specified reason.

With regard to any other mandates, this bill would provide that, if the Commission on State Mandates determines that the bill contains costs so mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

Vote: majority   Appropriation: no   Fiscal Committee: yes   Local Program: yes

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** The Legislature finds and declares all of the following:

(a) The Legislature has compelling interests in protecting both individual rights and public safety. The Legislature's intent and purpose in clarifying California's requirements governing the issuance of carry concealed weapons (CCW) licenses, and clarifying Dealers' Record of Sale cross-references, is to protect its residents' rights to keep and bear arms while also protecting the public's health and safety in the state by reducing the number of people killed, injured, and traumatized by gun violence; protecting the exercise of other fundamental rights, including the right to worship, attain an education, vote, and peaceably assemble and demonstrate; ensuring that law enforcement is able to effectively do its job; and combating terrorism.

(b) While the United States Supreme Court has recognized that the Second Amendment of the United States Constitution imposes some restrictions on states' ability to regulate firearms, it has recognized that the Second Amendment to the United States Constitution is not a "regulatory straightjacket." N.Y. State Rifle & Pistol Ass'n v. Bruen (2022), 142 S. Ct. 2111, 2133. Indeed, the Second Amendment allows States to adopt a "'variety' of gun regulations." N.Y. State Rifle & Pistol Ass'n (2022), 142 S. Ct. 2111, 2162 (conc. opn. of Kavanaugh, J.). And when it comes to restrictions on carrying firearms in public, the United States Supreme Court has recognized three times that states may restrict the carrying of firearms in "sensitive places." N.Y. State Rifle & Pistol Ass'n v. Bruen (2022), 142 S. Ct. 2111, 2133; see also McDonald v. City of Chicago (2010) 561 U.S. 742, 786 (plur. opn. of Alito, J.); District of Columbia v. Heller (2008) 554 U.S. 570, 626. It has also recognized that states may prohibit individuals who are not "law-abiding, responsible citizens" from carrying firearms in public. N.Y. State Rifle & Pistol Ass'n v. Bruen (2022), 142 S. Ct. 2111, 2138 fn.9.

(c) Indeed, the United States Supreme Court has affirmed the validity of "shall-issue" concealed carry licensing standards enacted in 43 states that include qualification standards that "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding responsible citizens,'" N.Y. State Rifle & Pistol Ass'n v. Bruen (2022) 142 S. Ct. 2111, 2138 fn.9. The laws of at least 21 of these states authorize officials to deny concealed carry licenses to otherwise eligible applicants who are found not to be law-abiding or responsible based on a determination that the applicant lacks the character or temperament to carry firearms in public spaces or otherwise presents a danger to self, others, or the community at large. (See Ala. Code § 13A-11-75(a) (1)(a); Ark. Code Ann. § 5-73-308(b)(1); Colo. Rev. Stat. § 18-12-203(2); Conn. Gen. Stat. §29-28(b); Del. Code, Tit. 11, § 1441; Ga. Code § 16-11-129(d)(4); 430 Ill. Comp. Stat. § 66/15; Ind. Code § 35-47-2-3(g); Iowa Code §724.8(3); Me. Rev. Stat. Ann., Tit. 25, § 2003; Minn. Stat. § 624.714; Mo. Rev. Stat. § 571.101.2(7); Mont. Code § 45-8-321(2); N.D. Cent. Code § 62.1-04-03(1)(e); Or. Rev. Stat. § 166.293(2); 18 Pa. Cons. Stat. § 6109(e)(1)(i); R.I. Gen. Laws § 11-47-11; S.D. Codified Laws § 23-7-7.1; Utah Code § 53-5-704(3)(a); Va. Code § 18.2-308.09(13); Wyo. Stat. § 6-8-104(g)). The United States Supreme Court repeatedly affirmed the validity of these states' standards, including specifically and approvingly citing the standards adopted in Connecticut, which, the Court noted, validly preclude an otherwise eligible applicant from qualifying for a concealed carry license if the licensing official determines the applicant's "conduct has shown them to be lacking the essential character of temperament necessary to be entrusted with a weapon." N.Y. State Rifle & Pistol Ass'n v. Bruen (2022) 142 S. Ct. 2111, 2123 fn.1.

(d) Over the past several years, a wealth of empirical studies have shown that crime is higher when more people carry firearms in public places. While California and other states have decided to limit the places and conditions under which residents may carry firearms, over the past several decades other states have decided to allow most people to carry firearms in most public places. Those later states have seen markedly higher crime rates. According to one study, in the 33 states that adopted these "right-to-carry" laws, violent crime was substantially higher—13 to 15 percent higher—10 years after the laws were adopted than it would have been, had those states not adopted those laws. See Donohue, et al., "Right-to-Carry" Laws and Violent Crime: A Comprehensive Assessment Using Panel Data and a State-Level Synthetic Control Analysis (2019) 16 J. Empirical Legal Stud. 198. That same study acknowledged that crime had dropped in both "right-to-carry" states and other states over the past several decades, but concluded that the violent crime reduction in states that did not adopt "right-to-carry" laws was an order of magnitude higher than those that did—a 42.3 percent drop in violent crime for those states that did not adopt "right-to-carry" laws compared to just a 4.3 percent drop for those that did.

(e) Broadly allowing individuals to carry firearms in most public areas increases the number of people wounded and killed by gun violence. Among other things, pervasive carrying increases the lethality of otherwise mundane situations, as we have seen shots fired in connection with road rage, talking on a phone in a theater, playing loud music at a gas station, a dispute over snow shoveling, and a dispute over the use of a disabled parking spot. Importantly, in many of these incidents, the shooters held permits that allowed them to carry firearms in public, meaning that they met the criteria necessary to secure a permit, which often include a requirement that the person not previously have been convicted of a serious crime.

(f) Another study concluded that states that changed from prohibiting concealed carry of guns to a regime where the state must issue a CCW permit to any qualified applicant who requests one—a transition to a "shall issue" jurisdiction—experienced a 12.3 percent increase in gun-related murder rates, and a 4.9 increase in overall murder rates. Gius, Using the Synthetic Control Method to Determine the Effects of Concealed Carry Laws on State-Level Murder Rates (2019) 57 Int'l Rev. L. & Econ. 1. Two other studies concluded that states with "shall-issue" laws had higher overall homicide rates, higher firearm homicide rates, and higher handgun homicide rates as compared to the "may-issue" regimes in place in California and other states. Siegel, et al., Easiness of Legal Access to Concealed Firearm Permits and Homicide Rates in the United States (2017) 107 Am. J. Pub. Health

1923 and comparably Bmall nreas A Panel Study Of Firearm and Homicide Deaths 1991 –
2016: A Panel Study (2019) 34 J. Gen. Internal Med. 2021. Several other studies reached similar results. Anita
Knopov et al., The Impact of State Firearm Laws on Homicide Rates among Black and White Populations in the
United States, 1991–2016 (2019) 44 Health & Soc. Work 232; John J. Donohue, Laws Facilitating Gun Carrying
and Homicide (2017) 107 Am. J. Pub. Health 1864; Emma E. Fridel, Comparing the Impact of Household Gun
Ownership and Concealed Carry Legislation on the Frequency of Mass Shootings and Firearms Homicide (2021)
38 Just. Q. 892; Cassandra K. Crifasi, Correction to: Association between Firearm Laws and Homicide in Urban
Counties (2018) 95 J. Urban Health 773; Paul R. Zimmerman, The Deterrence of Crime Through Private Security
Efforts: Theory and Evidence (2014) 37 Int'l Rev. L. & Econ. 66.

(g) States with permissive "right-to-carry" laws also witness higher rates of firearm workplace homicides than
those that did not have those laws. One study concluded that states with "right-to-carry" laws experienced 29
percent greater rates of firearm workplace homicides between 1992 and 2017 than those that did not. Mitchell L.
Doucette et al., "Right-to-Carry" Laws and Firearm Workplace Homicides: A Longitudinal Analysis (1992–2017)
(2019) 109 Am. J. Pub. Health 1747, 1751. Another peer-reviewed study found that restricting the ability to
carry concealed weapons was associated with a 5.79 percent reduction in workplace homicide rates. Erika L.
Sabbath et al., State-Level Changes in Firearm Laws and Workplace Homicide Rates: United States, 2011 to
2017 (2020) 110 Am. J. Pub. Health 230.

(h) While several studies from the late 1990s and early 2000s purported to conclude that increases in "right-to-
carry" laws either decreased or had no effect on crime, many other early studies concluded that it increased
crime. In 2005, the National Research Council issued a report evaluating the then-current literature about the
impact of "right-to-carry" laws on crime, and concluded that it was "'impossible to draw strong conclusions from
the existing literature on the causal impact' of "right-to-carry" laws on violent crime and property crime in
general and rape, aggravated assault, auto theft, burglary, and larceny in particular," and that the "existing data
and methods" were likely insufficient to resolve the question, and that "new analytical approaches and data"
were needed "if further headway is to be made." Nat'l Research Council, Firearms and Violence: A Critical Review
(2005) 272, 275.

(i) Since that time a number of social scientists have taken up the National Research Council's call. Those studies
overwhelmingly support the conclusion that more carrying of firearms in public leads to an increase in crime: of
the 35 social science studies looking at this issue since the National Research Council issued its report in 2005,
23 found an increase in crime, 7 found no effect, and 5 found a decrease in crime. A 2014 study from the
Harvard Injury Control Research Center concluded that a sizable majority of firearms researchers disagree with
the statement that the change in state level concealed carry laws in the United States over the past few decades
from more restrictive to more permissive has reduced crime rates.

(j) Widespread carrying of firearms also impedes the exercise of other fundamental rights. When firearms are
present in public spaces, it makes those places less safe, which discourages people from attending protests,
going to school, peacefully worshiping, voting in person, and enjoying other activities.

(1) (A) While the net effect of policies that allow most people to carry firearms in most places have negatively
impacted public safety broadly, their effects are likely to be far more deleterious when extended to college
campuses. Risks of violence, suicide attempts, alcohol abuse, and other risky behavior are greatly elevated
among college-aged, youth and in the campus environment, and the presence of firearms greatly increases the
risk of lethal and near-lethal outcomes from these behaviors and in this context. Daniel W. Webster et al.,
Firearms on College Campuses: Research Evidence and Policy Implications, Johns Hopkins Bloomberg Sch. of
Pub. Health (Oct. 15, 2016). Moreover, once Georgia passed a law allowing firearms to be carried on college
campuses, campus members reported a statistically significant increase in perceptions of the campus as
unsafe, fear of crime on campus, and lack of confidence in campus police; and a "statistically significantly
increase in the proportion of campus members who reported experiencing fearful conflicts on campus." Jennifer
McMahon-Howard et al., Examining the Effects of Passing a Campus Carry Law: Comparing Campus Safety
Before and After Georgia's New Campus Carry Law, 20 J. of Sch. Violence (2021) 430.

(B) Widespread carrying can also affect the ability to learn in primary and secondary schools. One study
concluded that students exposed to school shootings have an increased absence rate, are more likely to be
chronically absent and repeat a grade in the two years following the event, and suffer negative long-term
impacts on high school graduation rates, college enrollment and graduation, and future employment and
earnings. Marika Cabral et al., Trauma at School: The Impacts of Shootings on Students' Human Capital and
Economic Outcomes, Nat'l Bureau of Econ. Research (Dec. 2020). Another study looked at longer term
consequences of school shootings, finding that exposure to shootings at schools resulted in lower test

Case 1:22-cv-00475-KES-EPG Document 56 Filed 01/29/25 Page 9 of 37

rates, increased deaths, and increased consequences on mortality in students—particularly boys, who are exposed to the highest-victimization school shootings. Phillip Levine and Robin McKnight, Exposure to a School Shooting and Subsequent Well-Being, Nat'l Bureau of Econ. Research (Dec. 2020).

(2) Widespread public carry also intimidates those who hope to peacefully worship. Places of worship already experience serious incidents or threats of violence. According to one study, the percentage of mass shootings motivated by religious hate escalated from 1 percent between 1966 and 2000 to 9 percent during 2000–2014 to 18 percent during 2018-February 2020. Richard R. Johnson, Serious Violence at Places of Worship in the U.S.—Looking at the Numbers, Dolan Consulting Grp. (Sept. 2019). A review of the Federal Investigation Bureau's National Incident-Based Reporting System data—which covers only 20 percent of the country's population—from 2000 through 2016 found that 1,652 incidents of "serious violence" occurred at places of worship, including aggravated assaults, shootings, stabbings, and bombings, with 57 percent involving the use of a firearm. Extrapolating those figures to the entire country would suggest that there are about 480 incidents of serious violence at places of worship in the United States each year. Allowing more people to carry in places of worship threatens to make these incidents more likely.

(3) Carrying firearms impedes the exercise of other rights of the First Amendment to the United States Constitution, including the right to protest and vote. In a nationally representative survey, 60 percent responded that they would be "very unlikely" to attend a protest if guns were present, whereas only 7 percent said they would be "very likely" to attend such a protest. Alexandra Filindra, Americans Do Not Want Guns at Protests, this Research Shows, Wash. Post (Nov. 21, 2021). Another study concluded that 16 percent of demonstrations where firearms were present turned violent, as compared to less than 3 percent of demonstrations where firearms were not present. Everytown for Gun Safety & Armed Conflict Locations & Event Data Project, Armed Assembly: Guns, Demonstrations, and Political Violence in America (2021).

(k) An individual does not need to carry several firearms at any one time in order to effectively defend themselves. Studies have shown that, on average, individuals fire approximately two rounds when using a firearm in self-defense inside or outside of the home, including approximately 27 percent of incidents in which no shots are fired and the mere brandishing of the firearm is sufficient for self-defense. Limiting an individual to carrying no more than two firearms in public at any given time will not impair the ability of law-abiding, responsible individuals to engage in effective self-defense with a firearm.

(l) Laws requiring an assessment of dangerousness in connection with obtaining firearms have saved lives. One study concluded that since California's gun violence restraining order process—which allows family members and law enforcement to petition a court for an order temporarily prohibiting a person from purchasing or possessing firearms, if a court finds that the person is a danger to themselves or others—took effect in January 2016, there have been 21 instances in which the statute was used to prevent a mass shooting. Wintemute, et al., Extreme Risk Protection Orders Intended to Prevent Mass Shootings, 171 Annals of Internal Med. (2019) 655, 655-658. According to another study, 56 percent of mass shooters exhibited warning signs that they posed a risk to themselves or others before they carried out the shooting. Everytown for Gun Safety Support Fund, "Mass Shootings in America," (Nov. 2020). One hundred percent of perpetrators of school violence showed concerning behaviors before committing their acts, according to a study by the United States Secret Service and the United States Department of Education. U.S. Secret Serv., Nat'l Threat Assessment Ctr., Protecting America's Schools: A U.S. Secret Service Analysis of Targeted School Violence 43 (2019).

(m) Broad public carry laws also impede the ability of law enforcement to ensure the public's safety. For example, laws allowing open carry of firearms imperil law enforcement officers on the front lines by making it much more difficult for an officer to discern if a person is a threat, and when there is an active shooter situation, makes it harder to determine the source of the threat.

**SEC. 2.** Section 171b of the Penal Code is amended to read:

**171b.** (a) Any person who brings or possesses within any state or local public building or at any meeting required to be open to the public pursuant to Chapter 9 (commencing with Section 54950) of Part 1 of Division 2 of Title 5 of, or Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of, the Government Code, any of the following is guilty of a public offense punishable by imprisonment in a county jail for not more than one year, or in the state prison:

(1) Any firearm.

(2) Any deadly weapon described in Section 17235 or in any provision listed in Section 16590.

(3) A blackjack, slungshot, billy, sandclub, sap, or sandbag, unless the blade is secured or is capable of being fixed in an unguarded position by the use of one or two hands.

(4) Any unauthorized tear gas weapon.

(5) Any taser or stun gun as defined in Section 244.5.

(6) Any instrument that expels a metallic projectile, such as a BB or pellet, through the force of air pressure, CO2 pressure, or spring action, or any spot marker gun or paint gun.

(b) Subdivision (a) shall not apply to, or affect, any of the following:

(1) A person who possesses weapons in, or transports weapons into, a court of law to be used as evidence.

(2) (A) A duly appointed peace officer as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, a retired peace officer with authorization to carry concealed weapons as described in Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4 of Part 6, a full-time paid peace officer of another state or the federal government who is carrying out official duties while in California, or any person summoned by any of these officers to assist in making arrests or preserving the peace while they are actually engaged in assisting the officer.

(B) Notwithstanding subparagraph (A), subdivision (a) shall apply to any person who brings or possesses any weapon specified therein within any courtroom if they are a party to an action pending before the court.

(3) A person holding a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6 who possesses the firearm within a building designated for a court proceeding, including matters before a superior court, district court of appeal, or the California Supreme Court, and is a justice, judge, or commissioner of the court.

(4) A person who has permission to possess that weapon granted in writing by a duly authorized official who is in charge of the security of the state or local government building.

(5) A person who lawfully resides in, lawfully owns, or is in lawful possession of, that building with respect to those portions of the building that are not owned or leased by the state or local government.

(6) A person licensed or registered in accordance with, and acting within the course and scope of, Chapter 11.5 (commencing with Section 7512) or Chapter 11.6 (commencing with Section 7590) of Division 3 of the Business and Professions Code who has been hired by the owner or manager of the building if the person has permission pursuant to paragraph (5).

(7) (A) A person who, for the purpose of sale or trade, brings any weapon that may otherwise be lawfully transferred, into a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6 of Title 4 of Part 6.

(B) A person who, for purposes of an authorized public exhibition, brings any weapon that may otherwise be lawfully possessed, into a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6 of Title 4 of Part 6.

(c) As used in this section, "state or local public building" means a building that meets all of the following criteria:

(1) It is a building or part of a building owned or leased by the state or local government, if state or local public employees are regularly present for the purposes of performing their official duties. A state or local public building includes, but is not limited to, a building that contains a courtroom.

(2) It is not a building or facility, or a part thereof, that is referred to in Section 171c, 171d, 626.9, 626.95, or 626.10 of this code, or in Section 18544 of the Elections Code.

(3) It is a building not regularly used, and not intended to be used, by state or local employees as a place of residence.

**SEC. 3.** Section 171d of the Penal Code is amended to read:

**171d.** Any person, except a duly appointed peace officer as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, a full-time paid peace officer of another state or the federal government who is carrying out official duties while in California, any person summoned by that officer to assist in making arrests or

presence of the peace officers actually engaged in discharging their official duties, or the military forces of this state or of the United States engaged in the performance of their duties, the Governor or a member of their immediate family or a person acting with their permission with respect to the Governor's Mansion or any other residence of the Governor, any other constitutional officer or a member of their immediate family or a person acting with their permission with respect to the officer's residence, or a Member of the Legislature or a member of their immediate family or a person acting with their permission with respect to the Member's residence, shall be punished by imprisonment in a county jail for not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both the fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170, if they do either of the following:

(a) Bring a firearm into, or possess a firearm within, the Governor's Mansion, or any other residence of the Governor, the residence of any other constitutional officer, or the residence of any Member of the Legislature.

(b) Bring a firearm upon, or possess a firearm upon, the grounds of the Governor's Mansion or any other residence of the Governor, the residence of any other constitutional officer, or the residence of any Member of the Legislature.

**SEC. 4.** Section 171.5 of the Penal Code is amended to read:

**171.5.** (a) For purposes of this section:

(1) "Airport" means an airport, with a secured area, that regularly serves an air carrier holding a certificate issued by the United States Secretary of Transportation.

(2) "Passenger vessel terminal" means only that portion of a harbor or port facility, as described in Section 105.105(a)(2) of Title 33 of the Code of Federal Regulations, with a secured area that regularly serves scheduled commuter or passenger operations.

(3) "Sterile area" means a portion of an airport defined in the airport security program to which access generally is controlled through the screening of persons and property, as specified in Section 1540.5 of Title 49 of the Code of Federal Regulations, or a portion of any passenger vessel terminal to which, pursuant to the requirements set forth in Sections 105.255 and 105.260(a) of Title 33 of the Code of Federal Regulations, access is generally controlled in a manner consistent with the passenger vessel terminal's security plan and the maritime security level in effect at the time.

(b) It is unlawful for any person to knowingly possess any firearm in any building, real property, or parking area under the control of an airport, except as provided for in subdivision (b), (c), or (e) of Section 26230.

(c) It is unlawful for any person to knowingly possess, within any sterile area of an airport or a passenger vessel terminal, any of the following items:

(1) Any knife with a blade length in excess of four inches, the blade of which is fixed, or is capable of being fixed, in an unguarded position by the use of one or two hands.

(2) Any box cutter or straight razor.

(3) Any metal military practice hand grenade.

(4) Any metal replica hand grenade.

(5) Any plastic replica hand grenade.

(6) Any imitation firearm as defined in Section 417.4.

(7) Any frame, receiver, barrel, or magazine of a firearm.

(8) Any unauthorized tear gas weapon.

(9) Any taser or stun gun as defined in Section 244.5.

(10) Any instrument that expels a metallic projectile, such as a BB or pellet, through the force of air pressure, CO2 pressure, or spring action, or any spot marker gun or paint gun.

(11) Any ammunition as defined in Section 16150.

(d) Subdivisions (b) and (c) shall not apply to, or affect, any of the following:

(1) A duly appointed peace officer as defined in Chapter 4.5 (commencing with Section 830) of Part 2, a retired peace officer with authorization to carry concealed weapons as described in Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4 of Part 6, a full-time paid peace officer of another state or the federal government who is carrying out official duties while in California, or any person summoned by any of these officers to assist in making arrests or preserving the peace while they are actually engaged in assisting the officer.

(2) A person who has authorization to possess a weapon specified in subdivision (c), granted in writing by an airport security coordinator who is designated as specified in Section 1542.3 of Title 49 of the Code of Federal Regulations, and who is responsible for the security of the airport.

(3) A person, including an employee of a licensed contract guard service, who has authorization to possess a weapon specified in subdivision (c) granted in writing by a person discharging the duties of Facility Security Officer or Company Security Officer pursuant to an approved United States Coast Guard facility security plan, and who is responsible for the security of the passenger vessel terminal.

(e) Subdivision (b) shall not apply to, or affect, any person possessing an unloaded firearm being transported in accordance with Sections 1540.111(c)(2)(iii) and 1540.111(c)(2)(iv) of Title 49 of the Code of Federal Regulations, which require a hard-sided, locked container, so long as the person is not within any sterile area of an airport or a passenger vessel terminal.

(f) A violation of this section is punishable by imprisonment in a county jail for a period not exceeding six months, or by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(g) The provisions of this section are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission that is punishable in different ways by this and any other provision of law shall not be punished under more than one provision.

(h) Nothing in this section is intended to affect existing state or federal law regarding the transportation of firearms on airplanes in checked luggage or the possession of the items listed in subdivision (c) in areas that are not "sterile areas."

**SEC. 5.** Section 171.7 of the Penal Code is amended to read:

**171.7.** (a) For purposes of this section:

(1) "Public transit facility" means any land, building, or equipment, or any interest therein, including any station on a public transportation route, to which access is controlled in a manner consistent with the public transit authority's security plan, whether or not the operation thereof produces revenue, that has as its primary purpose the operation of a public transit system or the providing of services to the passengers of a public transit system. A public transit system includes the vehicles used in the system, including, but not limited to, motor vehicles, streetcars, trackless trolleys, buses, light rail systems, rapid transit systems, subways, trains, or jitneys, that transport members of the public for hire.

(2) "Firearm" has the same meaning as specified in subdivisions (a) and (b) of Section 16520.

(b) It is unlawful for any person to knowingly possess any of the following in a public transit facility:

(1) Any firearm.

(2) Any imitation firearm as defined in Section 417.4.

(3) Any instrument that expels a metallic projectile, such as a BB or pellet, through the force of air pressure, CO2 pressure, or spring action, or any spot marker gun or paint gun.

(4) Any metal military practice hand grenade.

(5) Any metal replica hand grenade.

(6) Any plastic replica hand grenade.

(7) Any unauthorized tear gas weapon.

(8) Any undetectable knife, as described in Section 17290.

(9) Any undetectable firearm, as described in Section 17280.

(c) (1) Subdivision (b) shall not apply to, or affect, any of the following:

(A) A duly appointed peace officer as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2.

(B) A retired peace officer with authorization to carry concealed weapons as described in Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4 of Part 6.

(C) A full-time paid peace officer of another state or the federal government who is carrying out official duties while in California.

(D) A qualified law enforcement officer of another state or the federal government, as permitted under the Law Enforcement Officers Safety Act pursuant to Section 926B or 926C of Title 18 of the United States Code.

(E) Any person summoned by any of the officers listed in subparagraphs (A) to (C), inclusive, to assist in making arrests or preserving the peace while they are actually engaged in assisting the officer.

(F) A person who is responsible for the security of the public transit system and who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon specified in subdivision (b).

(G) A person possessing an unloaded firearm while traveling on a public transit system that offers checked baggage services, so long as the firearm is stored in accordance with the public transit system's checked baggage policies.

(2) Paragraph (7) of subdivision (b) shall not apply to or affect the possession of a tear gas weapon when possession is permitted pursuant to Division 11 (commencing with Section 22810) of Title 3 of Part 6.

(d) A violation of this section is punishable by imprisonment in a county jail for a period not exceeding six months, or by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(e) The provisions of this section are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission that is punishable in different ways by this and any other provision of law shall not be punished under more than one provision.

(f) This section does not prevent prosecution under any other provision of law that may provide a greater punishment.

(g) This section shall be interpreted so as to be consistent with Section 926A of Title 18 of the United States Code.

**SEC. 6.** Section 626.9 of the Penal Code is amended to read:

**626.9.** (a) This section shall be known, and may be cited, as the Gun-Free School Zone Act of 1995.

(b) Any person who possesses a firearm in a place that the person knows, or reasonably should know, is a school zone as defined in paragraph (4) of subdivision (e), shall be punished as specified in subdivision (f).

(c) Subdivision (b) does not apply to the possession of a firearm under any of the following circumstances:

(1) Within a place of residence or place of business or on private property, if the place of residence, place of business, or private property is not part of the school grounds and the possession of the firearm is otherwise lawful.

(2) (A) When the firearm is an unloaded pistol, revolver, or other firearm capable of being concealed on the person is within a locked container in a motor vehicle or is within the locked trunk of a motor vehicle at all times.

(B) This section does not prohibit or limit the otherwise lawful transportation of any other firearm, other than a pistol, revolver, or other firearm capable of being concealed on the person, in accordance with state law.

(3) When the person possessing the firearm reasonably believes that they are in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to their life or safety. This subdivision does not apply

whose case is governed by a mutual restraining order issued pursuant to Division 10 (commencing with Section 6200) of the Family Code absent a factual finding of a specific threat to the person's life or safety. Upon a trial for violating subdivision (b), the trier of a fact shall determine whether the defendant was acting out of a reasonable belief that they were in grave danger.

(4) When the person is exempt from the prohibition against carrying a concealed firearm pursuant to Section 25615, 25625, 25630, or 25645.

(5) When the person holds a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6, who is carrying that firearm in an area that is within a distance of 1,000 feet from the grounds of the public or private school, but is not within any building, real property, or parking area under the control of a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive, or on a street or sidewalk immediately adjacent to a building, real property, or parking area under the control of that public or private school. Nothing in this paragraph shall prohibit a person holding a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6 from carrying a firearm in accordance with that license as provided in subdivisions (b), (c), or (e) of Section 26230.

(d) Except as provided in subdivision (b), it shall be unlawful for any person, with reckless disregard for the safety of another, to discharge, or attempt to discharge, a firearm in a school zone as defined in paragraph (4) of subdivision (e).

The prohibition contained in this subdivision does not apply to the discharge of a firearm to the extent that the conditions of paragraph (1) of subdivision (c) are satisfied.

(e) As used in this section, the following definitions shall apply:

(1) "Concealed firearm" has the same meaning as that term is given in Sections 25400 and 25610.

(2) "Firearm" has the same meaning as that term is given in subdivisions (a) to (d), inclusive, of Section 16520.

(3) "Locked container" has the same meaning as that term is given in Section 16850.

(4) "School zone" means an area in, or on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive, or within a distance of 1,000 feet from the grounds of the public or private school.

(f) (1) A person who violates subdivision (b) by possessing a firearm in, or on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or five years.

(2) A person who violates subdivision (b) by possessing a firearm within a distance of 1,000 feet from the grounds of a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive, shall be punished as follows:

(A) By imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or five years, if any of the following circumstances apply:

(i) If the person previously has been convicted of any felony, or of any crime made punishable by any provision listed in Section 16580.

(ii) If the person is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of Title 4 of Part 6 of this code or Section 8100 or 8103 of the Welfare and Institutions Code.

(iii) If the firearm is any pistol, revolver, or other firearm capable of being concealed upon the person and the offense is punished as a felony pursuant to Section 25400.

(B) By imprisonment in a county jail for not more than one year or by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or five years, in all cases other than those specified in subparagraph (A).

(3) A person who violates subdivision (d) shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for three, five, or seven years.

(g) A person convicted under this section of a misdemeanor violation of subdivision (b) or (d) who has been convicted previously of a misdemeanor offense enumerated in Section 23515 shall be punished by imprisonment in a county jail for not less than three months, or if probation is granted or if the execution or imposition of sentence is suspended, it shall be a condition thereof that they be imprisoned in a county jail for not less than three months.

(2) A person convicted under this section of a felony violation of subdivision (b) or (d) who has been convicted previously of a misdemeanor offense enumerated in Section 23515, if probation is granted or if the execution of sentence is suspended, it shall be a condition thereof that they be imprisoned in a county jail for not less than three months.

(3) A person convicted under this section for a felony violation of subdivision (b) or (d) who has been convicted previously of any felony, or of any crime made punishable by any provision listed in Section 16580, if probation is granted or if the execution or imposition of sentence is suspended, it shall be a condition thereof that they be imprisoned in a county jail for not less than three months.

(4) The court shall apply the three-month minimum sentence specified in this subdivision, except in unusual cases where the interests of justice would best be served by granting probation or suspending the execution or imposition of sentence without the minimum imprisonment required in this subdivision or by granting probation or suspending the execution or imposition of sentence with conditions other than those set forth in this subdivision, in which case the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by this disposition.

(h) Notwithstanding Section 25605, any person who brings or possesses a loaded firearm upon the grounds of a campus of, or buildings owned or operated for student housing, teaching, research, or administration by, a public or private university or college, that are contiguous or are clearly marked university property, unless it is with the written permission of the university or college president, their designee, or equivalent university or college authority, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years. Notwithstanding subdivision (k), a university or college shall post a prominent notice at primary entrances on noncontiguous property stating that firearms are prohibited on that property pursuant to this subdivision.

(i) Notwithstanding Section 25605, any person who brings or possesses a firearm upon the grounds of a campus of, or buildings owned or operated for student housing, teaching, research, or administration by, a public or private university or college, that are contiguous or are clearly marked university property, unless it is with the written permission of the university or college president, their designee, or equivalent university or college authority, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for one, two, or three years. Notwithstanding subdivision (k), a university or college shall post a prominent notice at primary entrances on noncontiguous property stating that firearms are prohibited on that property pursuant to this subdivision.

(j) For purposes of this section, a firearm shall be deemed to be loaded when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm. A muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder.

(k) This section does not require that notice be posted regarding the proscribed conduct.

(l) This section does not apply to a duly appointed peace officer as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, a full-time paid peace officer of another state or the federal government who is carrying out official duties while in California, any person summoned by any of these officers to assist in making arrests or preserving the peace while they are actually engaged in assisting the officer, a member of the military forces of this state or of the United States who is engaged in the performance of their duties, or an armored vehicle guard, engaged in the performance of their duties as defined in subdivision (d) of Section 7582.1 of the Business and Professions Code.

(m) This section does not apply to a security guard authorized to carry a loaded firearm pursuant to Article 4 (commencing with Section 26000) of Chapter 3 of Division 5 of Title 4 of Part 6.

(n) This section does not apply to an existing shooting range at a public or private school or university or college campus.

(o) This section does not apply to an honorably retired peace officer authorized to carry a concealed or loaded firearm pursuant to any of the following:

(1) Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of this Part.

(2) Section 25650.

(3) Sections 25900 to 25910, inclusive.

(4) Section 26020.

(5) Paragraph (2) of subdivision (c) of Section 26300.

(p) This section does not apply to a peace officer appointed pursuant to Section 830.6 who is authorized to carry a firearm by the appointing agency.

(q) (1) This section does not apply to the activities of a program involving shooting sports or activities, including, but not limited to, trap shooting, skeet shooting, sporting clays, and pistol shooting, that are sanctioned by a school, school district, college, university, or other governing body of the institution, that occur on the grounds of a public or private school or university or college campus.

(2) This section does not apply to the activities of a state-certified hunter education program pursuant to Section 3051 of the Fish and Game Code if all firearms are unloaded and participants do not possess live ammunition in a school building.

**SEC. 7.** Section 25350 is added to the Penal Code, to read:

**25350.** (a) If any section, subdivision, paragraph, subparagraph, sentence, clause, or phrase of any provision in this division is for any reason held unconstitutional, that decision does not affect the validity of any other provision in the division. The Legislature hereby declares that it would have passed the provisions listed in this division and each chapter, section, subdivision, paragraph, subparagraph, sentence, clause, and phrase of those provisions irrespective of the fact that any one or more other sections, subdivisions, paragraphs, subparagraphs, sentences, clauses, or phrases be declared unconstitutional.

(b) If any application of any provision in this division to any person, group of persons, or circumstances is found by a court to be invalid or unconstitutional, the remaining applications of that provision to all other persons and circumstances shall be severed and shall not be affected. All constitutionally valid applications of this division shall be severed from any applications that a court finds to be invalid, leaving the valid applications in force, because it is the Legislature's intent and priority that valid applications be allowed to stand alone. Even if a reviewing court finds a provision of this division to impose an unconstitutional burden in a large or substantial fraction of relevant cases, the applications that do not present an unconstitutional burden shall be severed from the remaining applications and shall remain in force, and shall be treated as if the Legislature had enacted a statute limited to the persons, group of persons, or circumstances for which the statute's application does not present an unconstitutional burden. If any court declares or finds a provision of this division facially unconstitutional, when discrete applications of that provision can be enforced against a person, group of persons, or circumstances without violating the United States Constitution and the California Constitution, those applications shall be severed from all remaining applications of the provision, and the provision shall be interpreted as if the Legislature had enacted a provision limited to the persons, group of persons, or circumstances for which the provision's application will not violate the United States Constitution and the California Constitution.

**SEC. 8.** Section 25610 of the Penal Code is amended to read:

**25610.** Section 25400 shall not be construed to prohibit any citizen of the United States over 18 years of age who resides or is temporarily within this state, and who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, from transporting or carrying any pistol, revolver, or other firearm capable of being concealed upon the person for any purpose specified in Sections 25510 to 25595, inclusive, provided that either of the following applies to the firearm:

(a) The firearm is unloaded, within a motor vehicle, and locked in the vehicle's trunk or in a locked container in the vehicle.

(b) The firearm is unloaded, carried by the person directly to or from any motor vehicle, and, while carrying the firearm, the firearm is contained within a locked container.

**SEC. 9.** Section 25850 of the Penal Code is amended to read:

25850. (a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city, city and county, or in any public place or on any public street in a prohibited area of an unincorporated area of a county or city and county.

(b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

(c) Carrying a loaded firearm in violation of this section is punishable, as follows:

(1) Where the person previously has been convicted of any felony, or of any crime made punishable by a provision listed in Section 16580, as a felony.

(2) Where the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

(3) Where the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22, under the California Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1), as a felony.

(4) Where the person is not in lawful possession of the firearm, or is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, as a felony.

(5) Where the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment pursuant to subdivision (h) of Section 1170, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(6) Where the person is not listed with the Department of Justice pursuant to Section 11106 as the recorded owner of the handgun, by imprisonment pursuant to subdivision (h) of Section 1170, or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment.

(7) In all cases other than those specified in paragraphs (1) to (6), inclusive, as a misdemeanor, punishable by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(d) (1) Every person convicted under this section who has previously been convicted of an offense enumerated in Section 23515, or of any crime made punishable under a provision listed in Section 16580, shall serve a term of at least three months in a county jail, or, if granted probation or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned for a period of at least three months.

(2) The court shall apply the three-month minimum sentence except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in this section or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in this section, in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

(e) A violation of this section that is punished by imprisonment in a county jail not exceeding one year shall not constitute a conviction of a crime punishable by imprisonment for a term exceeding one year for the purposes of determining federal firearms eligibility under Section 922(g)(1) of Title 18 of the United States Code.

(f) Nothing in this section, or in Article 3 (commencing with Section 25900) or Article 4 (commencing with Section 26000), shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a greater penalty than this section.

(g) Notwithstanding paragraphs (2) and (3) of subdivision (a) of Section 836, a peace officer may make an arrest without a warrant:

(1) When the peace officer has reasonable cause to believe that this section is being violated, whether or not this section has, in fact, been violated in the peace officer's presence.

(2) Whenever the officer has reasonable cause to believe that the person to be arrested has violated this section, whether or not this section has, in fact, been violated.

(h) A peace officer may arrest a person for a violation of paragraph (6) of subdivision (c), if the peace officer has probable cause to believe that the person is carrying a handgun in violation of this section and that person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the recorded owner of that handgun.

**SEC. 10.** Section 26150 of the Penal Code is amended to read:

**26150.** (a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person upon proof of all of the following:

(1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.

(2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.

(3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.

(4) The applicant has completed a course of training as described in Section 26165.

(5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

(b) The sheriff shall issue or renew a license under subdivision (a) in either of the following formats:

(1) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(c) (1) Nothing in this chapter shall preclude the sheriff of the county from entering into an agreement with the chief or other head of a municipal police department of a city to process all applications for licenses, renewals of licenses, or amendments to licenses pursuant to this chapter, in lieu of the sheriff.

(2) This subdivision shall only apply to applicants who reside within the city in which the chief or other head of the municipal police department has agreed to process applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter.

**SEC. 11.** Section 26155 of the Penal Code is amended to read:

**26155.** (a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the chief or other head of a municipal police department of any city or city and county shall issue or renew a license to that person upon proof of all of the following:

(1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.

(2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.

(3) The applicant is a resident of that city or county. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.

(4) The applicant has completed a course of training as described in Section 26165.

(5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

(b) The chief or other head of a municipal police department shall issue or renew a license under subdivision (a) in either of the following formats:

(1) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Where the population of the county in which the city is located is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(c) Nothing in this chapter shall preclude the chief or other head of a municipal police department of any city from entering an agreement with the sheriff of the county in which the city is located for the sheriff to process all applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter.

**SEC. 12.** Section 26162 is added to the Penal Code, to read:

**26162.** (a) Prior to the issuance of a license, renewal of a license, or amendment to a license, each licensing authority with direct access to the designated Department of Justice system shall determine if the applicant is the recorded owner of the particular pistol, revolver, or other firearm capable of being concealed upon the person reported in the application for a license or the application for the amendment to a license under this chapter.

(b) An agency with direct access to the designated Department of Justice system shall confirm the applicant's information with firearm ownership maintained in the system. An agency without access to the system shall confirm this information with the sheriff of the county in which the agency is located.

**SEC. 13.** Section 26165 of the Penal Code is amended to read:

**26165.** (a) For new license applicants, the course of training for issuance of a license under Section 26150 or 26155 may be any course acceptable to the licensing authority that meets all of the following minimum criteria:

(1) The course shall be no less than 16 hours in length.

(2) The course shall include instruction on firearm safety, firearm handling, shooting technique, safe storage, legal methods to transport firearms and securing firearms in vehicles, laws governing where permitholders may carry firearms, laws regarding the permissible use of a firearm, and laws regarding the permissible use of lethal force in self-defense.

(3) The course shall include a component, no less than one hour in length, on mental health and mental health resources.

(4) Except for the component on mental health and mental health resources, the course shall be taught and supervised by firearms instructors certified by the Department of Justice pursuant to Section 31635, or in a manner to be prescribed by regulation.

(5) The course shall require students to pass a written examination to demonstrate their understanding of the covered topics.

(6) The course shall include live-fire shooting exercises on a firing range and shall include a demonstration by the applicant of safe handling of, and shooting proficiency with, each firearm that the applicant is applying to be licensed to carry.

(b) A licensing authority shall establish, and make available to the public, the standards it uses when issuing licenses with regards to the required live-fire shooting exercises, including, but not limited to, a minimum number of rounds to be fired and minimum passing scores from specified firing distances.

(c) Notwithstanding subdivision (a), the licensing authority may require additional training, up to a maximum of 24 hours, but only if required uniformly of all license applicants without exception.

(d) For license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than eight hours, and shall satisfy the requirements of paragraphs (2) to (6), inclusive, of subdivision (a). No course of training shall be required for any person certified by the licensing authority as a trainer for purposes of this section, in order for that person to renew a license issued pursuant to this chapter.

(e) The applicant shall not be required to pay for any training courses prior to the initial determination of whether the applicant is a disqualified person pursuant to paragraph (1) of subdivision (d) of Section 26202.

**SEC. 14.** Section 26170 of the Penal Code is amended to read:

**26170.** (a) Upon proof of all of the following, the sheriff of a county, or the chief or other head of a municipal police department of any city or city and county, shall issue to an applicant a new license or license renewal to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person:

  (1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.

  (2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.

  (3) The applicant has been deputized or appointed as a peace officer pursuant to subdivision (a) or (b) of Section 830.6 by that sheriff or that chief of police or other head of a municipal police department.

  (4) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued, or, the applicant is authorized to carry a firearm that is registered to the agency for which the licensee has been deputized or appointed to serve as a peace officer.

(b) Direct or indirect fees for the issuance of a license pursuant to this section may be waived.

(c) The fact that an applicant for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person has been deputized or appointed as a peace officer pursuant to subdivision (a) or (b) of Section 830.6 shall be considered only for the purpose of issuing a license pursuant to this section, and shall not be considered for the purpose of issuing a license pursuant to Section 26150 or 26155.

**SEC. 15.** Section 26175 of the Penal Code is amended to read:

**26175.** (a) (1) (A) Applications for licenses and applications for amendments to licenses under this chapter shall be uniform throughout the state, upon forms to be prescribed by the Attorney General.

  (B) Upon the effective date of the act that added this subparagraph, the Attorney General may issue forms to be used for applications for licenses and applications for amendments to licenses under this chapter, in conformance with the act that added this subparagraph, to be used until 60 days after the effective date of the act that added this subparagraph.

  (2) The Attorney General shall convene a committee composed of one representative of the California State Sheriffs' Association, one representative of the California Police Chiefs Association, and one representative of the Department of Justice to review, and, as deemed appropriate, revise the standard application form for licenses prescribed by the Attorney General pursuant to paragraph (1). If the committee does not release a revised application form by 60 days after the effective date of the act that added subparagraph (B) of paragraph (1), the Attorney General has the sole authority to revise the standard application form for licenses. After the initial revised application is issued, if one of the committee's members concludes that further revisions are necessary, that member shall notify the other members of the committee, and the committee shall revise the application within three months of the notification. If the committee fails to release a revised application within that time, the Attorney General has the sole authority to revise the standard application form for licenses.

  (3) (A) The Attorney General shall develop a uniform license that may be used as indicia of proof of licensure throughout the state.

that a licensing authority can approve the license unless licenses issued by the agencies include all of the information required in subdivision (i), including a recent photograph of the applicant, and are deemed to be in substantial compliance with standards developed by the committee described in subparagraph (C), if developed, as they relate to the physical dimensions and general appearance of the licenses. The Attorney General shall retain exemplars of approved licenses and shall maintain a list of agencies issuing local licenses. Approved licenses may be used as indicia of proof of licensure under this chapter in lieu of the uniform license developed by the Attorney General.

(C) A committee composed of two representatives of the California State Sheriffs' Association, two representatives of the California Police Chiefs Association, and one representative of the Department of Justice shall convene to review and revise, as the committee deems appropriate, the design standard for licenses issued by local agencies that may be used as indicia of proof of licensure throughout the state, provided that the design standard meets the requirements of subparagraph (B). If the committee does not issue a design standard by 60 days after the effective date of the act that added subparagraph (B) of paragraph (1), the Attorney General has the sole authority to set the design standard for licenses issued by local agencies that may be used as indicia of proof of licensure throughout the state, provided that the design standard meets the requirements of subparagraph (B). After the initial design standard is issued, if one of the committee's members concludes that further revisions are necessary, that member shall notify the other members of the committee, and the committee shall revise the design standard within three months of the notification. If the committee fails to release a design standard within that time, the Attorney General has the sole authority to revise the design standard for licenses issued by local agencies that may be used as indicia of proof of licensure throughout the state.

(b) The application shall include a section summarizing the requirements of state law that result in the automatic denial of a license.

(c) (1) The standard application form for licenses described in subdivision (a) shall require information from the applicant, including, but not limited to, the name, occupation, residence, and business address of the applicant, the applicant's age, height, weight, color of eyes and hair, the applicant's prior detentions, arrests, and criminal convictions, whether the applicant has been the subject of an order listed in paragraph (3) of subdivision (a) of Section 26202 or a valid restraining, protective, or stay-away order issued by an out-of-state jurisdiction pursuant to laws concerning domestic violence, family law, protection of children or elderly persons, stalking, harassment, witness intimidation, or firearm possession, whether the applicant has previously been taken into custody as a danger to self or others under Section 5150 or Part 1.5 (commencing with Section 5585) of Division 5 of the Welfare and Institutions Code, assessed under Section 5151 of the Welfare and Institutions Code, admitted to a mental health facility under Section 5151 or 5152 of the Welfare and Institutions Code, or certified under Section 5250, 5260, or 5270.15 of the Welfare and Institutions Code, whether any licensing authority in this state or elsewhere has previously denied the applicant a license to carry a firearm or revoked such a license for any reason, the names and contact information of three persons willing to serve as references for the applicant, at least one of whom must be a person described in subdivision (b) of Section 273.5, if applicable, and at least one of whom must be the applicant's cohabitant, if applicable, and other information sufficient to make a determination of whether the applicant is a disqualified person pursuant to Section 26202.

(2) In lieu of residence or business addresses, an applicant who participates in the program described in Chapter 3.1 (commencing with Section 6205) of Division 7 of Title 1 of the Government Code may provide the address designated to the applicant by the Secretary of State.

(3) In lieu of a residence, an applicant who falls within the categories described in subdivision (c) of Section 26220 may provide a business address or an alternative mailing address, such as a post office box.

(d) Completed applications for licenses shall be filed in writing and signed by the applicant, and contain all information required by the application, as determined by the licensing authority.

(e) Applications for amendments to licenses shall be filed in writing and signed by the applicant, and shall state what type of amendment is sought pursuant to Section 26215 and the reason for desiring the amendment.

(f) The forms shall contain a provision whereby the applicant attests to the truth of statements contained in the application.

(g) An applicant shall not be required to complete any additional application or form for a license, except to clarify or interpret information provided by the applicant on the standard application form.

(h) Licenses issued by cities, counties, and cities and counties described in this section and renewal for those licenses are exempt from the requirements of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(i) (1) As of 60 days after the effective date of the act that added subparagraph (B) of paragraph (1) of subdivision (a), a license issued upon the application shall set forth the licensee's full name, driver's license or identification number, Criminal Identification and Information number, occupation, residence and business address, the licensee's date of birth, height, weight, and color of eyes and hair, and indicate the type of license issued as it relates to Section 26220, including license issuance and expiration date, and shall, in addition, contain the licensee's fingerprints, a picture of the licensee, and a description of the weapon or weapons authorized to be carried, detailing the name of the manufacturer, the model, the serial number, and the caliber. The license issued to the licensee may be laminated. Prior to 60 days after the effective date of the act that added subparagraph (B) of paragraph (1) of subdivision (a), any license issued upon the application shall take the form of the uniform license developed by the Attorney General and used as indicia of proof of licensure throughout the state immediately prior to the effective date of the act that added this paragraph.

(2) In lieu of residence or business addresses, a licensee who participates in the program described in Chapter 3.1 (commencing with Section 6205) of Division 7 of Title 1 of the Government Code may provide the address designated to the applicant by the Secretary of State. Upon termination from the program described in Chapter 3.1 (commencing with Section 6205) of Division 7 of Title 1 of the Government Code, the licensee shall comply with Section 26210.

(3) In lieu of a residence address, a licensee who falls within the categories described in subdivision (c) of Section 26220 may provide a business address or an alternative mailing address, such as a post office box. Upon termination from the category described in subdivision (c) of Section 26220, the licensee shall comply with Section 26210.

**SEC. 16.** Section 26185 of the Penal Code is amended to read:

**26185.** (a) (1) Upon issuance of the notice described in paragraph (1) of subdivision (d) of Section 26202, the licensing authority shall submit to the Department of Justice fingerprint images and related information required by the Department of Justice for each applicant applying for a new license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, pursuant to subdivision (u) of Section 11105. The Department of Justice shall provide a state or federal response to the licensing authority, pursuant to subdivision (l) of Section 11105 of the Penal Code.

(2) Upon receipt of the fingerprints of an applicant for a new license, as well as the fee as prescribed in Section 26190, the department shall promptly furnish the forwarding licensing authority information as to whether the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. The department shall make this determination in a manner to be prescribed through regulations. If the department is unable to ascertain the final disposition of an arrest or criminal charge, the outcome of the mental health treatment or evaluation, or the applicant's eligibility to possess, receive, own, or purchase a firearm, the department shall notify the forwarding licensing authority. For each applicant for a new license, the department shall also promptly furnish the forwarding licensing authority a criminal history report pertaining to the applicant.

(3) No new license shall be issued by any licensing authority unless the report described in paragraph (2) confirms the applicant's eligibility to possess, receive, own, or purchase a firearm.

(b) (1) For each applicant for a renewal license, upon issuance of the notice described in paragraph (1) of subdivision (d) of Section 26202, the licensing authority shall submit to the department the renewal notification described in paragraph (1) of subdivision (d) of Section 26202, in a manner and format prescribed by the department.

(2) For each renewal notification submitted to the department in accordance with paragraph (1) on or after September 1, 2026, the licensing authority shall also submit to the department fingerprint images and related information required by the department for each applicant applying for a renewal license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, pursuant to subdivision (u) of Section 11105. The department shall then provide a state or federal response to the licensing authority, pursuant to subdivision (l) of Section 11105.

(c) (1) For each applicant for a renewal license, upon receipt by the department of the renewal notification as prescribed in subdivision (b), as well as the fee as prescribed in Section 26190, the department shall determine

whether the applicant is prohibited by state or federal law from possessing, owning, or purchasing a firearm.

(2) For each applicant for a renewal license whose renewal notification is submitted to the department prior to September 1, 2026, the department shall determine whether the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm and notify the forwarding licensing agency in a manner to be prescribed through regulations.

(3) For each applicant for a renewal license whose renewal notification is submitted to the department on or after September 1, 2026, upon receipt of the applicant's fingerprints, the department shall promptly furnish the forwarding licensing authority information as to whether the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. The department shall make this determination in a manner to be prescribed through regulations. If the department is unable to ascertain the final disposition of an arrest or criminal charge, the outcome of the mental health treatment or evaluation, or the applicant's eligibility to possess, receive, own, or purchase a firearm, the department shall notify the forwarding licensing authority. For each applicant for a renewal license, the department shall also promptly furnish the forwarding licensing authority a criminal history report pertaining to the applicant.

(d) For any renewal license applicant referred to the department prior to the effective date of the act that added this subdivision, the department may use any method authorized through regulations implementing this section to determine if the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e) As used in this section, "licensing authority" means a sheriff of a county, or the chief or other head of a municipal police department of any city or city and county.

**SEC. 17.** Section 26190 of the Penal Code is amended to read:

**26190.** (a) (1) An applicant for a new license or for the renewal of a license shall pay at the time of filing the application a fee determined by the Department of Justice. The fee shall not exceed the application processing costs of the Department of Justice for the direct costs of furnishing the information and report required by Section 26185.

(2) After the department establishes fees sufficient to reimburse the department for processing costs, fees charged shall increase at a rate not to exceed the legislatively approved annual cost-of-living adjustments for the department's budget.

(3) The officer receiving the application and the fee shall transmit the fee, with the fingerprints, if required, to the Department of Justice in accordance with Section 26185.

(b) (1) The licensing authority of any city, city and county, or county shall charge an additional fee in an amount equal to the reasonable costs for processing the application for a new license or a license renewal, issuing the license, and enforcing the license, including any required notices, excluding fingerprint and training costs, and shall transmit the additional fee, if any, to the city, city and county, or county treasury.

(2) The first 50 percent of this additional local fee may be collected upon filing of the initial or renewal application. The balance of the fee shall be collected only upon issuance of the license.

(c) These local fees may be increased to reflect increases in the licensing authority's reasonable costs, as described in paragraph (1) of subdivision (b). In no case shall the local fees exceed the reasonable costs to the licensing authority, as described in paragraph (1) of subdivision (b).

(d) (1) In the case of an amended license pursuant to Section 26215, the licensing authority of any city, city and county, or county may charge a fee in an amount not to exceed the reasonable costs to process the amended license. In no case shall the amount charged to the applicant for the amended license exceed the reasonable costs to the licensing authority.

(2) This fee may be increased at a rate to reflect increases in the licensing authority's reasonable costs, as described in paragraph (1) of subdivision (d). In no case shall this fee exceed the reasonable costs to the licensing authority, as described in paragraph (1).

(3) The licensing authority shall transmit the fee to the city, city and county, or county treasury.

(e) (1) As a psychological assessment on the individual to be required by a licensing authority, the license applicant shall be referred to a licensed psychologist acceptable to the licensing authority. The applicant may be charged for the actual cost of the assessment. In no case shall the amount charged to the applicant for the psychological assessment exceed the reasonable costs to the licensing authority.

(2) Additional psychological assessment of an applicant seeking license renewal shall be required only if there is compelling evidence of a public safety concern to indicate that an assessment is necessary. The applicant may be charged for the actual cost of the assessment. In no case shall the cost of psychological assessment exceed the reasonable costs to the licensing authority.

**SEC. 18.** Section 26195 of the Penal Code is amended to read:

**26195.** (a) A license under this chapter shall not be issued if the Department of Justice determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(b) (1) A license under this chapter shall be revoked by the local licensing authority if at any time either the local licensing authority determines or is notified by the Department of Justice of any of the following:

(A) A licensee is prohibited by state or federal law from owning or purchasing a firearm.

(B) A licensee has breached any of the conditions or restrictions set forth in or imposed in accordance with Section 26200.

(C) Any information provided by a licensee in connection with an application for a new license or a license renewal is inaccurate or incomplete.

(D) A licensee has become a disqualified person and cannot receive such a license, as determined in accordance with the standards set forth in Section 26202.

(2) If at any time the Department of Justice determines that a licensee is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, the department shall immediately notify the local licensing authority of the determination.

(3) If the local licensing authority revokes the license, the Department of Justice shall be notified of the revocation pursuant to Section 26225. The licensee shall also be immediately notified of the revocation in writing.

**SEC. 19.** Section 26200 of the Penal Code is amended to read:

**26200.** (a) While carrying a firearm as authorized by a license issued pursuant to this chapter, a licensee shall not do any of the following:

(1) Consume an alcoholic beverage or controlled substance as described in Sections 11053 to 11058, inclusive, of the Health and Safety Code.

(2) Be in a place having a primary purpose of dispensing alcoholic beverages for onsite consumption.

(3) Be under the influence of any alcoholic beverage, medication, or controlled substance as described in Sections 11053 to 11058, inclusive, of the Health and Safety Code.

(4) Carry a firearm not listed on the license or a firearm for which they are not the recorded owner. This paragraph does not apply to a licensee who was issued a license pursuant to Section 26170, in which case they may carry a firearm that is registered to the agency for which the licensee has been deputized or appointed to serve as a peace officer, and the licensee carries the firearm consistent with that agency's policies.

(5) Falsely represent to a person that the licensee is a peace officer.

(6) Engage in an unjustified display of a deadly weapon.

(7) Fail to carry the license on their person.

(8) Impede a peace officer in the conduct of their activities.

(9) Refuse to display the license or to provide the firearm to a peace officer upon demand for purposes of inspecting the firearm.

1/29/25, 9:01 AM                                Bill Text - SB-2 Firearms.

Case 1:22-cv-00475-KES-EPG    Document 56    Filed 01/29/25    Page 25 of 37
(10) Has sold, offered for sale, or displayed for sale a firearm in an unlawful manner.

(b) In addition to the restrictions and conditions listed in subdivision (a), a license issued pursuant to this chapter may also include any reasonable restrictions or conditions that the licensing authority deems warranted, including restrictions as to the time, place, manner, and circumstances under which a licensee may carry a pistol, revolver, or other firearm capable of being concealed upon the person.

(c) Any restrictions imposed pursuant to subdivision (b) shall be indicated on any license issued.

(d) A licensee authorized to carry a firearm pursuant to this chapter shall not carry more than two firearms under the licensee's control at one time.

**SEC. 20.** Section 26202 of the Penal Code is repealed.

**SEC. 21.** Section 26202 is added to the Penal Code, to read:

**26202.** (a) Unless a court makes a contrary determination pursuant to Section 26206, an applicant shall be deemed to be a disqualified person and cannot receive or renew a license pursuant to Section 26150, 26155, or 26170 if the applicant:

(1) Is reasonably likely to be a danger to self, others, or the community at large, as demonstrated by anything in the application for a license or through the investigation described in subdivision (b), or as shown by the results of any psychological assessment, including, but not limited to, the assessment described in subdivision (e) of Section 26190.

(2) Has been convicted of contempt of court under Section 166.

(3) Has been subject to any restraining order, protective order, or other type of court order issued pursuant to the following statutory provisions, unless that order expired or was vacated or otherwise canceled more than five years prior to the licensing authority receiving the completed application:

(A) Section 646.91 or Part 3 (commencing with Section 6240) of Division 10 of the Family Code.

(B) Part 4 (commencing with Section 6300) of Division 10 of the Family Code.

(C) Sections 136.2 and 18100.

(D) Section 527.6, 527.8, or 527.85 of the Code of Civil Procedure.

(E) Section 213.5, 304, 362.4, 726.5, or 15657.03 of the Welfare and Institutions Code.

(4) In the 10 years prior to the licensing authority receiving the completed application for a new license or a license renewal, has been convicted of an offense listed in Section 422.6, 422.7, 422.75, or 29805.

(5) Has engaged in an unlawful or reckless use, display, or brandishing of a firearm.

(6) In the 10 years prior to the licensing authority receiving the completed application for a new license or a license renewal, has been charged with any offense listed in Section 290, 667.5, 1192.7, 1192.8, or 29805 that was dismissed pursuant to a plea or dismissed with a waiver pursuant to People v. Harvey (1979) 25 Cal.3d 754.

(7) In the five years prior to the licensing authority receiving the completed application for a new license or a license renewal, has been committed to or incarcerated in county jail or state prison for, or on probation, parole, postrelease community supervision, or mandatory supervision as a result of, a conviction of an offense, an element of which involves controlled substances, as described in Sections 11053 to 11058, inclusive, of the Health and Safety Code, or alcohol.

(8) Is currently abusing controlled substances, as described in Sections 11053 to 11058, inclusive, of the Health and Safety Code, or alcohol.

(9) In the 10 years prior to the licensing authority receiving the completed application for a new license or a license renewal, has experienced the loss or theft of multiple firearms due to the applicant's lack of compliance with federal, state, or local law regarding storing, transporting, or securing the firearm. For purposes of this paragraph, "multiple firearms" includes a loss of more than one firearm on the same occasion, or the loss of a single firearm on more than one occasion.

(10) Stated a refusal to use a firearm as required under Section 25505 or any applicable state, federal, or local law requiring the reporting of the loss of a firearm.

(b) In determining whether an applicant is a disqualified person and cannot receive or renew a license in accordance with subdivision (a) of this section, the licensing authority shall conduct an investigation that meets all of the following minimum requirements:

(1) An in-person interview with the applicant. For renewal applications, the licensing authority may elect to forgo this requirement.

(2) In-person, virtual, or telephonic interviews with at least three character references, at least one of whom must be a person described in subdivision (b) of Section 273.5, if applicable, and at least one of whom must be the applicant's cohabitant, if applicable. For renewal applications, the licensing authority may elect to forgo this requirement.

(3) A review of publicly available information about the applicant, including publicly available statements published or posted by the applicant.

(4) A review of all information provided in the application for a license.

(5) A review of all information provided by the Department of Justice in accordance with subdivision (a) of, paragraph (2) of subdivision (b) of, and paragraph (3) of subdivision (c) of Section 26185, as well as firearms eligibility notices or any other information subsequently provided to the licensing authority regarding the applicant.

(6) A review of the information in the California Restraining and Protective Order System accessible through the California Law Enforcement Telecommunications System.

(c) In determining whether an applicant is a disqualified person and cannot receive or renew a license in accordance with subdivision (a), nothing in this section precludes the licensing authority from engaging in investigative efforts in addition to those listed in subdivision (b).

(d) Within 90 days of receiving the completed application for a new license or a license renewal, the licensing authority shall give written notice to the applicant of the licensing authority's initial determination, based on its investigation thus far, of whether an applicant is a disqualified person pursuant to Section 26150, 26155, or 26170 as follows:

(1) If the licensing authority makes an initial determination that, based on its investigation thus far, the applicant is not a disqualified person, the notice shall inform the applicant to proceed with the training requirements specified in Section 26165. The licensing authority shall then submit the applicant's fingerprints or the renewal notification to the Department of Justice in accordance with Section 26185.

(2) If, within 90 days of receiving the completed application for a new license or a license renewal, the licensing authority determines that the applicant is a disqualified person, the notice shall inform the applicant that the request for a license has been denied, state the reason as to why the determination was made, and inform the applicant that they may request a hearing from a court, as outlined in Section 26206. A licensing authority providing notice under this paragraph informing the applicant that the request for a license has been denied satisfies the requirement to provide notice of a denial of a license pursuant to Section 26205.

(e) The prohibitions listed in subdivision (a) shall apply whether or not the relevant conduct, order, conviction, charge, commitment, or other relevant action took place or was issued or entered before the effective date of the act that added this subdivision.

**SEC. 22.** Section 26205 of the Penal Code is amended to read:

**26205.** (a) Unless otherwise specified in subdivision (b), the licensing authority shall give written notice to the applicant indicating if the license under this chapter is approved or denied. The licensing authority shall give this notice within 120 days of receiving the completed application for a new license, or 30 days after receipt of the information and report from the Department of Justice described in paragraph (2) of subdivision (a) of Section 26185, whichever is later. The licensing authority shall give this notice within 120 days of receiving the completed application for a license renewal.

(b) In determining whether to approve or deny an application for a new license or a license renewal the licensing authority shall apply the statutory requirements in effect as of the date the licensing authority received the

completed application, or to renew a license under this chapter, except that the requirements in paragraph (2) of subdivision (a) of Sections 26150, 26155, and 26170. For applications for a new license submitted prior to the effective date of the act that added this subdivision, the licensing authority shall give written notice to the applicant indicating if the license under this chapter is approved or denied within 120 days of receiving the completed application, or 30 days after receipt of the information and report from the Department of Justice described in paragraph (2) of subdivision (a) of Section 26185, whichever is later.

(c) If the license is denied, the notice shall state which requirement was not satisfied.

**SEC. 23.** Section 26206 is added to the Penal Code, to read:

**26206.** (a) If a new license or license renewal pursuant to Section 26150, 26155, or 26170 is denied or revoked based on a determination that the applicant is a disqualified person for such a license, as set forth in Section 26202, the licensing authority shall provide the applicant with the notice of this determination as required under subdivision (d) of Section 26202, Section 26205, or paragraph (3) of subdivision (b) of Section 26195. The notice shall state the reason as to why the determination was made and also inform the applicant that they may request a hearing from a court, as provided in this section, to review the denial or revocation. The licensing authority shall provide the applicant with a copy of the most recent "Request for Hearing to Challenge Disqualified Person Determination" form prescribed by the Department of Justice under this section.

(b) The department shall develop a "Request for Hearing to Challenge Disqualified Person Determination" form for use throughout the state. The form shall include an authorization for the release of the applicant's criminal history records to the appropriate court solely for use in the hearing conducted pursuant to this section. The "Request for Hearing to Challenge Disqualified Person Determination" form is deemed to be a local form expressly exempt from the requirements of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(c) Except as specified in paragraph (2), an applicant shall have 30 days after the receipt of the notice of denial described in subdivision (a) to request a hearing to review the denial or revocation from the superior court of their county of residence. The request for hearing shall be made on the "Request for Hearing to Challenge Disqualified Person Determination" form prescribed by the department.

(1) Nothing in this section prevents a licensing authority from requiring an applicant to use and exhaust any process for appealing a denial or revocation that may be offered by the licensing authority prior to 30 days after the receipt of the notice of denial described in subdivision (a) before the applicant may request a hearing as described in this subdivision. Licensing authorities that require applicants to use such a process shall resolve any appeal within 60 days of when the appeal is filed.

(2) If an applicant uses and exhausts any process for appealing a denial or revocation that is offered by the licensing authority as described in paragraph (1), an applicant shall have 30 days after receiving notice of an unsuccessful appeal to request a hearing to review the denial or revocation from the superior court of their county of residence. The request for hearing shall be made on the "Request for Hearing to Challenge Disqualified Person Determination" form prescribed by the department.

(d) (1) An applicant who has requested a hearing under this section shall be given a hearing. The clerk of the court shall set a hearing date and notify the person, the licensing authority, the department, and the district attorney. The people of the State of California shall be the plaintiff in the proceeding and shall be represented by the district attorney. Within 14 days after receiving from the clerk of the court the request for a hearing, the department shall file copies of the applicant's criminal history report described in this section with the superior court under seal, and the licensing authority shall file any records or reports on which it relied in denying or revoking the license at issue with the superior court. The licensing authority may also, or instead, file a declaration that summarizes the information it relied upon in denying or revoking the license at issue. The reports filed by the department and the licensing authority shall be disclosed to the person and to the district attorney upon request. The court, upon motion of the applicant establishing that confidential information is likely to be discussed during the hearing that would cause harm to the person, shall conduct the hearing in camera, with only the relevant parties present, unless the court finds that the public interest would be better served by conducting the hearing in public.

(2) The court shall set the hearing within 60 days of receipt of the request for a hearing. Upon showing good cause, the district attorney shall be entitled to a continuance not to exceed 30 days after the district attorney was notified of the hearing date by the clerk of the court. If additional continuances are granted, the total length of time for continuances shall not exceed 60 days.

(3) Reliable hearsay, as well as declarations and published studies, including official statistical data, and any other material and relevant evidence that is not excluded under Section 352 of the Evidence Code shall be admissible at the hearing under this section.

(e) The people shall bear the burden of showing by a preponderance of the evidence that the applicant is a disqualified person in accordance with Section 26202.

(f) If the court finds at the hearing that the people have not met their burden, or if the district attorney declines or fails to go forward in the hearing, the court shall order as follows:

(1) If the applicant was denied a new license or license renewal, the court shall order that the person shall not be deemed a disqualified person to receive a new license or license renewal pursuant to Section 26150, 26155, or 26170, and that the licensing authority issue notice to proceed with the training requirements and submit the applicant's fingerprints or the renewal notification in accordance with paragraph (1) of subdivision (d) of Section 26202. The Department of Justice shall then confirm the applicant's eligibility to possess, receive, own, or purchase a firearm in a manner prescribed through regulations. A copy of the order shall be submitted to the Department of Justice.

(2) If the applicant's license was revoked, the court shall order that the person's license be reinstated with the original expiration date extended by the length of time between the date of the revocation notice provided under paragraph (3) of subdivision (b) of Section 26195 and the date of the court's order so long as the Department of Justice confirms the applicant's eligibility to possess, receive, own, or purchase a firearm in a manner prescribed through regulation. A copy of the order shall be submitted to the Department of Justice.

(g) If the court finds that the people have met their burden to show by a preponderance of the evidence that the applicant is a disqualified person in accordance with Section 26202, the court shall inform the person of their right to file a subsequent application for a license no sooner than two years from the date of the hearing.

(h) If an applicant has been denied a license or had a license revoked based on any ground outlined in Section 26202 two or more times in a 10-year period, which determination was either not challenged or upheld at a hearing under this section, any subsequent hearings under this section for the applicant shall be conducted as described in this section, with the exception that the burden of proof shall be on the applicant to establish by a preponderance of the evidence that the applicant is not a disqualified person in accordance with Section 26202.

(i) If a new license or license renewal pursuant to Section 26150, 26155, or 26170 is denied or revoked based on the applicant's failure to satisfy paragraph (2), (3), (4), or (5) of subdivision (a) of Section 26150, paragraph (2), (3), (4), or (5) of subdivision (a) of Section 26155, or paragraph (2), (3), or (4) of subdivision (a) of Section 26170, the licensing authority shall provide the applicant with the notice required under Section 26205 or paragraph (3) of subdivision (b) of Section 26195, as applicable, and inform the applicant that they may apply to the superior court of the county in which they reside for a writ of mandate pursuant to Section 1085 of the Code of Civil Procedure. Except as specified in paragraph (2), the application for writ of mandate shall be made within 30 days after the receipt of the notice of denial or the notice of revocation.

(1) Nothing in this section prevents a licensing authority from requiring an applicant to use and exhaust any process for appealing a denial or revocation that may be offered by the licensing authority prior to 30 days after the receipt of the notice of denial described in subdivision (a). Licensing authorities that require applicants to use such a process shall resolve any appeal within 60 days of when the appeal is filed.

(2) If an applicant uses and exhausts any process for appealing a denial or revocation that is offered by the licensing authority as described in paragraph (1), an applicant shall have 30 days after receiving notice of an unsuccessful appeal to file the application for writ of mandate described in this subdivision.

SEC. 24. Section 26210 of the Penal Code is amended to read:

26210. (a) When a licensee under this chapter has a change of address, the license shall be amended to reflect the new address and a new license shall be issued pursuant to subdivision (b) of Section 26215.

(b) The licensee shall notify the licensing authority in writing within 10 days of any change in the licensee's place of residence, and within 10 days of receiving that notice, the licensing authority shall notify the Department of Justice of the change in a licensee's place of residence.

(c) If both of the following conditions are satisfied, a license to carry a concealed handgun may not be revoked solely because the licensee's place of residence has changed to another county:

(1) The licensee has not violated any of the conditions or restrictions imposed on the license or the conditions imposed in accordance with Section 26200.

(2) The licensee has not become prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(d) Notwithstanding subdivision (c), if a licensee's place of residence was the basis for issuance of a license, any license issued pursuant to Section 26150 or 26155 shall expire 90 days after the licensee moves from the county of issuance.

(e) If the license is one to carry loaded and exposed a pistol, revolver, or other firearm capable of being concealed upon the person, the license shall be revoked immediately upon a change of the licensee's place of residence to another county.

**SEC. 25.** Section 26220 of the Penal Code is amended to read:

**26220.** (a) Except as otherwise provided in this section and in subdivision (c) of Section 26210, a license issued pursuant to Section 26150 or 26155 is valid for any period of time not to exceed two years from the date of the license.

(b) If the licensee's place of employment or business was the basis for issuance of a license pursuant to Section 26150, the license is valid for any period of time not to exceed 90 days from the date of the license, unless the license was issued pursuant to subdivision (d). The license shall be valid only in the county in which the license was originally issued. The licensee shall give a copy of this license to the licensing authority of the city, county, or city and county in which the licensee resides. The licensing authority that originally issued the license shall inform the licensee verbally and in writing in at least 16-point type of this obligation to give a copy of the license to the licensing authority of the city, county, or city and county of residence. Any application to renew or extend the validity of, or reissue, the license may be granted only upon the concurrence of the licensing authority that originally issued the license and the licensing authority of the city, county, or city and county in which the licensee resides.

(c) A license issued pursuant to Section 26150 or 26155 is valid for any period of time not to exceed three years from the date of the license if the license is issued to any of the following individuals:

(1) A judge of a California court of record.

(2) A full-time court commissioner of a California court of record.

(3) A judge of a federal court.

(4) A magistrate of a federal court.

(d) A license issued pursuant to Section 26150 or 26155 is valid for any period of time not to exceed four years from the date of the license if the license is issued to a custodial officer who is an employee of the sheriff as provided in Section 831.5, except that the license shall be invalid upon the conclusion of the person's employment pursuant to Section 831.5 if the four-year period has not otherwise expired or any other condition imposed pursuant to this article does not limit the validity of the license to a shorter time period.

(e) A license issued pursuant to Section 26170 to a peace officer appointed pursuant to Section 830.6 is valid for any period of time not to exceed four years from the date of the license, except that the license shall be invalid upon the conclusion of the person's appointment pursuant to Section 830.6 if the four-year period has not otherwise expired or any other condition imposed pursuant to this article does not limit the validity of the license to a shorter time period.

**SEC. 26.** Section 26225 of the Penal Code is amended to read:

**26225.** (a) A record of the following shall be maintained in the office of the licensing authority:

(1) The denial of a license.

(2) The denial of an amendment to a license.

(3) The issuance of a license.

(4) The amendment of a license.

(5) A dealer in firearms.

(b) Copies of each of the following shall be filed immediately by the licensing authority with the Department of Justice, in a manner as prescribed by the Attorney General:

(1) The denial of a license.

(2) The denial of an amendment to a license.

(3) The issuance of a license.

(4) The amendment of a license.

(5) The revocation of a license.

(c) (1) Commencing on or before January 1, 2000, and annually thereafter, each licensing authority shall submit to the Attorney General the total number of licenses issued to peace officers pursuant to Section 26170, and to judges pursuant to Section 26150 or 26155.

(2) The Attorney General shall collect and record the information submitted pursuant to this subdivision by county and licensing authority.

(d) The Department of Justice may adopt emergency regulations for the purpose of implementing Sections 26150 to 26230, inclusive, Section 29805, and Section 31635. The adoption of emergency regulations shall be deemed to be an emergency and necessary for the immediate preservation of the public peace, health and safety, or general welfare for purposes of Sections 11346.1 and 11349.6 of the Government Code. Emergency regulations adopted pursuant to this section shall be exempt from review by the Office of Administrative Law. The emergency regulations authorized by this section shall be submitted to the Office of Administrative Law for filing with the Secretary of State and shall remain in effect no later than two years after the effective date of the act that added this subdivision.

**SEC. 27.** Section 26230 is added to the Penal Code, to read:

**26230.** (a) A person granted a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person pursuant to Section 26150, 26155, or 26170 shall not carry a firearm on or into any of the following:

(1) A place prohibited by Section 626.9.

(2) A building, real property, or parking area under the control of a preschool or childcare facility, including a room or portion of a building under the control of a preschool or childcare facility. Nothing in this paragraph shall prevent the operator of a childcare facility in a family home from owning or possessing a firearm in the home if no child under child care at the home is present in the home or the firearm in the home is unloaded, stored in a locked container, and stored separately from ammunition when a child under child care at the home is present in the home so long as the childcare provider notifies clients that there is a firearm in the home.

(3) A building, parking area, or portion of a building under the control of an officer of the executive or legislative branch of the state government, except as allowed pursuant to paragraph (2) of subdivision (b) of Section 171c.

(4) A building designated for a court proceeding, including matters before a superior court, district court of appeal, or the California Supreme Court, parking area under the control of the owner or operator of that building, or a building or portion of a building under the control of the Supreme Court, unless the person is a justice, judge, or commissioner of that court.

(5) A building, parking area, or portion of a building under the control of a unit of local government, unless the firearm is being carried for purposes of training pursuant to Section 26165.

(6) A building, real property, and parking area under the control of an adult or juvenile detention or correctional institution, prison, or jail.

(7) A building, real property, and parking area under the control of a public or private hospital or hospital affiliate, mental health facility, nursing home, medical office, urgent care facility, or other place at which medical services are customarily provided.

(8) A bus, train, or other form of transportation paid for in whole or in part with public funds, and a building, real property, or parking area under the control of a transportation authority supported in whole or in part with

(9) A building, real property, and parking area under the control of a vendor or an establishment where intoxicating liquor is sold for consumption on the premises.

(10) A public gathering or special event conducted on property open to the public that requires the issuance of a permit from a federal, state, or local government and sidewalk or street immediately adjacent to the public gathering or special event but is not more than 1,000 feet from the event or gathering, provided this prohibition shall not apply to a licensee who must walk through a public gathering in order to access their residence, place of business, or vehicle.

(11) A playground or public or private youth center, as defined in Section 626.95, and a street or sidewalk immediately adjacent to the playground or youth center.

(12) A park, athletic area, or athletic facility that is open to the public and a street or sidewalk immediately adjacent to those areas, provided this prohibition shall not apply to a licensee who must walk through such a place in order to access their residence, place of business, or vehicle.

(13) Real property under the control of the Department of Parks and Recreation or Department of Fish and Wildlife, except those areas designated for hunting pursuant to Section 5003.1 of the Public Resources Code, Section 4501 of Title 14 of the California Code of Regulations, or any other designated public hunting area, public shooting ground, or building where firearm possession is permitted by applicable law.

(14) Any area under the control of a public or private community college, college, or university, including, but not limited to, buildings, classrooms, laboratories, medical clinics, hospitals, artistic venues, athletic fields or venues, entertainment venues, officially recognized university-related organization properties, whether owned or leased, and any real property, including parking areas, sidewalks, and common areas.

(15) A building, real property, or parking area that is or would be used for gambling or gaming of any kind whatsoever, including, but not limited to, casinos, gambling establishments, gaming clubs, bingo operations, facilities licensed by the California Horse Racing Board, or a facility wherein banked or percentage games, any form of gambling device, or lotteries, other than the California State Lottery, are or will be played.

(16) A stadium, arena, or the real property or parking area under the control of a stadium, arena, or a collegiate or professional sporting or eSporting event.

(17) A building, real property, or parking area under the control of a public library.

(18) A building, real property, or parking area under the control of an airport or passenger vessel terminal, as those terms are defined in subdivision (a) of Section 171.5.

(19) A building, real property, or parking area under the control of an amusement park.

(20) A building, real property, or parking area under the control of a zoo or museum.

(21) A street, driveway, parking area, property, building, or facility, owned, leased, controlled, or used by a nuclear energy, storage, weapons, or development site or facility regulated by the federal Nuclear Regulatory Commission.

(22) A church, synagogue, mosque, or other place of worship, including in any parking area immediately adjacent thereto, unless the operator of the place of worship clearly and conspicuously posts a sign at the entrance of the building or on the premises indicating that licenseholders are permitted to carry firearms on the property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.

(23) A financial institution or parking area under the control of a financial institution.

(24) A police, sheriff, or highway patrol station or parking area under control of a law enforcement agency.

(25) A polling place, voting center, precinct, or other area or location where votes are being cast or cast ballots are being returned or counted, or the streets or sidewalks immediately adjacent to any of these places.

(26) Any other privately owned commercial establishment that is open to the public, unless the operator of the establishment clearly and conspicuously posts a sign at the entrance of the building or on the premises

indicating identification of its permitted occupancy or property. Signs shall be of a uniform design as prescribed by the Department of Justice and shall be at least four inches by six inches in size.

(27) Any other place or area prohibited by other provisions of state law.

(28) Any other place or area prohibited by federal law.

(29) Any other place or area prohibited by local law.

(b) Notwithstanding subdivision (a), except under paragraph (21) or (28) of subdivision (a), a licensee may transport a firearm and ammunition within their vehicle so long as the firearm is locked in a lock box, as defined in subdivision (y) of Section 4082 and subdivision (b) of Section 4094 of Title 11 of the California Code of Regulations, and the lock box is a firearm safety device, as defined in Section 16540, that is listed on the department's Roster of Firearm Safety Devices Certified for Sale pursuant to Sections 23650 and 23655. Nothing in this subdivision is intended to preempt local laws placing more restrictive requirements upon the storage of firearms in vehicles.

(c) Notwithstanding subdivision (a), except under paragraph (21) or (28) of subdivision (a), a licensee prohibited from carrying a concealed firearm into the parking area of a prohibited location specified in subdivision (a) shall be allowed to:

(1) Transport a concealed firearm or ammunition within a vehicle into or out of the parking area so long as the firearm is locked in a lock box.

(2) Store ammunition or a firearm within a locked lock box and out of plain view within the vehicle in the parking area. Nothing in this paragraph is intended to preempt local laws placing more restrictive requirements upon the storage of firearms in vehicles.

(3) Transport a concealed firearm in the immediate area surrounding their vehicle within a prohibited parking lot area only for the limited purpose of storing or retrieving a firearm within a locked lock box in the vehicle's trunk or other place inside the vehicle that is out of plain view.

(d) For purposes of subdivision (c), a lock box is an item as defined in subdivision (b) of Section 4082 and subdivision (y) of Section 4094 of Title 11 of the California Code of Regulations, which is a firearm safety device, as defined in Section 16540, that is listed on the Department's Roster of Firearm Safety Devices Certified for Sale pursuant to Sections 23650 and 23655.

(e) Except in the places specified in paragraph (14) of subdivision (a), a licensee shall not be in violation of this section while they are traveling along a public right-of-way that touches or crosses any of the premises identified in subdivision (a) if the concealed firearm is carried on their person in accordance with the provisions of this act or is being transported in a vehicle by the licensee in accordance with all other applicable provisions of law. Nothing in this section allows a person to loiter or remain in a place longer than necessary to complete their travel.

(f) Nothing in this section shall prohibit the carrying of a firearm where it is otherwise expressly authorized by law.

**SEC. 28.** Section 26235 is added to the Penal Code, to read:

**26235.** (a) For purposes of implementing this chapter, the Department of Justice may enter into exclusive or nonexclusive contracts, or amend existing contracts, on a bid or negotiated basis, including contracts to implement new or change existing information technology systems.

(b) Notwithstanding any other law, contracts entered into or amended, or changes to existing information technology systems made pursuant to this section shall be exempt from Chapter 6 (commencing with Section 14825) of Part 5.5 of Division 3 of Title 2 of the Government Code, Chapter 5 (commencing with Section 19130) of Part 2 of Division 5 of Title 2 of the Government Code, Part 2 (commencing with Section 12100) of Division 2 of the Public Contract Code, the Statewide Information Management Manual, and the State Administrative Manual and shall be exempt from the review or approval of any division of the Department of General Services or the Department of Technology.

**SEC. 29.** Section 29805 of the Penal Code is amended to read:

**29805.** (a) (1) Except as provided in Section 29855, subdivision (a) of Section 29800, or subdivision (b), any person who has been convicted of a misdemeanor violation of Section 71, 76, 136.1, 136.5, or 140, subdivision (d) of Section 148, subdivision (f) of Section 148.5, Section 171b, paragraph (1) of subdivision (a) of Section 171c, Section 171d, 186.28, 240, 241, 242, 243, 243.4, 244.5, 245, 245.5, 246.3, 247, 273.5, 273.6, 417, 417.6, 422, 422.6, 626.9, 646.9, 830.95, 17500, 17510, 25300, 25800, 30315, or 32625, subdivision (b) or (d) of Section 26100, or Section 27510, or Section 8100, 8101, or 8103 of the Welfare and Institutions Code, any firearm-related offense pursuant to Sections 871.5 and 1001.5 of the Welfare and Institutions Code, Section 487 if the property taken was a firearm, or of the conduct punished in subdivision (c) of Section 27590, and who, within 10 years of the conviction, owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(2) Any person who has an outstanding warrant for any misdemeanor offense described in this subdivision, and who has knowledge of the outstanding warrant, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(b) Any person who is convicted, on or after January 1, 2019, of a misdemeanor violation of Section 273.5, and who subsequently owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) Any person who is convicted on or after January 1, 2020, of a misdemeanor violation of Section 25100, 25135, or 25200, and who, within 10 years of the conviction owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(d) Any person who is convicted on or after January 1, 2023, of a misdemeanor violation of Section 273a, subdivision (b) or (c) of Section 368, or subdivision (e) or (f) of Section 29180, and who, within 10 years of the conviction owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(e) Any person who is convicted on or after January 1, 2024, of a misdemeanor violation of paragraph (5), (6), or (7) of subdivision (c) of Section 25400, paragraph (5), (6), or (7) of subdivision (c) of Section 25850, subdivision (a) of Section 26350, or subdivision (a) of Section 26400, and who, within 10 years of the conviction owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(f) The court, on forms prescribed by the Department of Justice, shall notify the department of persons subject to this section. However, the prohibition in this section may be reduced, eliminated, or conditioned as provided in Section 29855 or 29860.

**SEC. 29.5.** Section 29805 of the Penal Code is amended to read:

**29805.** (a) (1) Except as provided in Section 29855, subdivision (a) of Section 29800, or subdivision (b), any person who has been convicted of a misdemeanor violation of Section 71, 76, 136.1, 136.5, or 140, subdivision (d) of Section 148, subdivision (f) of Section 148.5, Section 171b, paragraph (1) of subdivision (a) of Section 171c, Section 171d, 186.28, 240, 241, 242, 243, 243.4, 244.5, 245, 245.5, 246.3, 247, 273.5, 273.6, 417, 417.6, 422, 422.6, 626.9, 646.9, 830.95, 17500, 17510, 25300, 25800, 30315, or 32625, subdivision (b) or (d) of Section 26100, or Section 27510, or Section 8100, 8101, or 8103 of the Welfare and Institutions Code, any firearm-related offense pursuant to Sections 871.5 and 1001.5 of the Welfare and Institutions Code, Section 487 if the property taken was a firearm, or of the conduct punished in subdivision (c) of Section 27590, and who, within 10 years of the conviction, owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(2) Any person who has an outstanding warrant for any misdemeanor offense described in this subdivision, and who has knowledge of the outstanding warrant, and who owns, purchases, receives, or has in possession

or subdivision (e) of Section 368, is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(b) Any person who is convicted, on or after January 1, 2019, of a misdemeanor violation of Section 273.5, and who subsequently owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) Any person who is convicted on or after January 1, 2020, of a misdemeanor violation of Section 25100, 25135, or 25200, and who, within 10 years of the conviction owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(d) Any person who is convicted on or after January 1, 2023, of a misdemeanor violation of Section 273a, subdivision (b) or (c) of Section 368, or subdivision (e) or (f) of Section 29180, and who, within 10 years of the conviction owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(e) Any person who is convicted on or after January 1, 2024, of a misdemeanor violation of paragraph (5), (6), or (7) of subdivision (c) of Section 25400, paragraph (5), (6), or (7) of subdivision (c) of Section 25850, subdivision (a) of Section 26350, or subdivision (a) of Section 26400, and who, within 10 years of the conviction owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(f) Except as provided in Section 29855 or subdivision (a) of Section 29800, any person who is convicted on or after January 1, 2024, of a misdemeanor violation of this section, and who, within 10 years of the conviction owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(g) The court, on forms prescribed by the Department of Justice, shall notify the department of persons subject to this section. However, the prohibition in this section may be reduced, eliminated, or conditioned as provided in Section 29855 or 29860.

**SEC. 30.** Section 30370 of the Penal Code is amended to read:

**30370.** (a) Commencing July 1, 2019, the department shall electronically approve the purchase or transfer of ammunition through a vendor, as defined in Section 16151, except as otherwise specified. This approval shall occur at the time of purchase or transfer, prior to the purchaser or transferee taking possession of the ammunition. Pursuant to the authorization specified in paragraph (1) of subdivision (c) of Section 30352, the following persons are authorized to purchase ammunition:

(1) A purchaser or transferee whose information matches an entry in the Automated Firearms System (AFS) and who is eligible to possess ammunition as specified in subdivision (b).

(2) A purchaser or transferee who has a current certificate of eligibility issued by the department pursuant to Section 26710.

(3) A purchaser or transferee who is not prohibited from purchasing or possessing ammunition in a single ammunition transaction or purchase made pursuant to the procedure developed pursuant to subdivision (c).

(b) To determine if the purchaser or transferee is eligible to purchase or possess ammunition pursuant to paragraph (1) of subdivision (a), the department shall cross-reference the ammunition purchaser's or transferee's name, date of birth, current address, and driver's license or other government identification number, as described in Section 28180, with the information maintained in the AFS. If the purchaser's or transferee's information does not match an AFS entry, the transaction shall be denied. If the purchaser's or transferee's information matches an AFS entry, the department shall determine if the purchaser or transferee falls within a class of persons who are prohibited from owning or possessing ammunition by cross-referencing with the

Prohibited Armed Persons File. If the purchaser or transferee is prohibited from owning or possessing a firearm, the transaction shall be denied.

(c) The department shall develop a procedure in which a person who is not prohibited from purchasing or possessing ammunition may be approved for a single ammunition transaction or purchase. The department shall recover the cost of processing and regulatory and enforcement activities related to this section by charging the ammunition transaction or purchase applicant a fee not to exceed the fee charged for the department's Dealers' Record of Sale (DROS) process, as described in Section 28225, as it read on December 31, 2019, and not to exceed the department's reasonable costs.

(d) A vendor is prohibited from providing a purchaser or transferee ammunition without department approval. If a vendor cannot electronically verify a person's eligibility to purchase or possess ammunition via an Internet connection, the department shall provide a telephone line to verify eligibility. This option is available to ammunition vendors who can demonstrate legitimate geographical and telecommunications limitations in submitting the information electronically and who are approved by the department to use the telephone line verification.

(e) The department shall recover the reasonable cost of regulatory and enforcement activities related to this article by charging ammunition purchasers and transferees a per transaction fee not to exceed one dollar ($1), provided, however, that the fee may be increased at a rate not to exceed any increases in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations, not to exceed the reasonable regulatory and enforcement costs.

(f) A fund to be known as the "Ammunition Safety and Enforcement Special Fund" is hereby created within the State Treasury. All fees received pursuant to this section shall be deposited into the Ammunition Safety and Enforcement Special Fund and, notwithstanding Section 13340 of the Government Code, are continuously appropriated for purposes of implementing, operating, and enforcing the ammunition authorization program provided for in this section and Section 30352 and for repaying the start-up loan provided for in Section 30371.

(g) The Department of Justice is authorized to adopt regulations to implement this section.

**SEC. 30.5.** Section 30370 of the Penal Code is amended to read:

**30370.** (a) Commencing July 1, 2019, the department shall electronically approve the purchase or transfer of ammunition through a vendor, as defined in Section 16151, except as otherwise specified. This approval shall occur at the time of purchase or transfer, prior to the purchaser or transferee taking possession of the ammunition. Pursuant to the authorization specified in paragraph (1) of subdivision (c) of Section 30352, the following persons are authorized to purchase ammunition:

(1) A purchaser or transferee whose information matches an entry in the Automated Firearms System (AFS) and who is eligible to possess ammunition as specified in subdivision (b).

(2) A purchaser or transferee who has a current certificate of eligibility issued by the department pursuant to Section 26710.

(3) A purchaser or transferee who is not prohibited from purchasing or possessing ammunition in a single ammunition transaction or purchase made pursuant to the procedure developed pursuant to subdivision (c).

(b) To determine if the purchaser or transferee is eligible to purchase or possess ammunition pursuant to paragraph (1) of subdivision (a), the department shall cross-reference the ammunition purchaser's or transferee's name, date of birth, current address, and driver's license or other government identification number, as described in Section 28180, with the information maintained in the AFS. If the purchaser's or transferee's information does not match an AFS entry, the transaction shall be denied. If the purchaser's or transferee's information matches an AFS entry, the department shall determine if the purchaser or transferee falls within a class of persons who are prohibited from owning or possessing ammunition by cross-referencing with the Prohibited Armed Persons File. If the purchaser or transferee is prohibited from owning or possessing a firearm, the transaction shall be denied.

(c) The department shall develop a procedure in which a person who is not prohibited from purchasing or possessing ammunition may be approved for a single ammunition transaction or purchase. The department shall recover the cost of processing and regulatory and enforcement activities related to this section by charging the ammunition transaction or purchase applicant a fee not to exceed the fee charged for the department's Dealers'

Recover shall be disclosed to purchasers and transferees, ... ... the number of rounds and not to exceed the department's reasonable costs.

(d) A vendor is prohibited from providing a purchaser or transferee ammunition without department approval. If a vendor cannot electronically verify a person's eligibility to purchase or possess ammunition via an internet connection, the department shall provide a telephone line to verify eligibility. This option is available to ammunition vendors who can demonstrate legitimate geographical and telecommunications limitations in submitting the information electronically and who are approved by the department to use the telephone line verification.

(e) The department shall recover the reasonable cost of regulatory and enforcement activities related to this article by charging ammunition purchasers and transferees a per transaction fee not to exceed one dollar ($1), provided, however, that the Attorney General may adjust the fee as needed pursuant to this section, not to exceed the reasonable regulatory and enforcement costs for operating the program related to this article.

(f) A fund to be known as the "Ammunition Safety and Enforcement Special Fund" is hereby created within the State Treasury. All fees received pursuant to this section shall be deposited into the Ammunition Safety and Enforcement Special Fund and, notwithstanding Section 13340 of the Government Code, are continuously appropriated for purposes of implementing, operating, and enforcing the ammunition authorization program provided for in this section and Section 30352 and for repaying the start-up loan provided for in Section 30371.

(g) The Department of Justice is authorized to adopt regulations to implement this section.

**SEC. 31.** The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

**SEC. 32.** (a) Section 29.5 of this bill incorporates amendments to Section 29805 of the Penal Code proposed by both this bill and Senate Bill 368. That section of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2024, (2) each bill amends Section 29805 of the Penal Code, and (3) this bill is enacted after Senate Bill 368, in which case Section 29805 of this bill shall not become operative.

(b) Section 30.5 of this bill incorporates amendments to Section 30370 of the Penal Code proposed by this bill and Assembly Bill 135. That section of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2024, (2) each bill amends Section 30370 of the Penal Code, and (3) this bill is enacted after Assembly Bill 135, in which case Section 30370 of the Penal Code, as amended by Assembly Bill 135, shall remain operative only until the operative date of this bill, at which time Section 30.5 of this bill shall become operative, and Section 30 of this bill shall not become operative.

(c) Section 30.5 of this bill incorporates amendments to Section 30370 of the Penal Code proposed by this bill and Senate Bill 135. That section of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2024, (2) each bill amends Section 30370 of the Penal Code, and (3) this bill is enacted after Senate Bill 135, in which case Section 30370 of the Penal Code, as amended by Assembly Bill 135, shall remain operative only until the operative date of this bill, at which time Section 30.5 of this bill shall become operative, and Section 30 of this bill shall not become operative.

**SEC. 33.** No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution for certain costs that may be incurred by a local agency or school district because, in that regard, this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

However, if the Commission on State Mandates determines that this act contains other costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

1

## PROOF OF SERVICE BY UNITED STATES MAIL

2

I, Vincent Soliz, declare as follows:

3

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  I am employed at the Fresno County Counsel's Office, 2220 Tulare Street, Fifth Floor, Fresno, California, 93721.

4

5

On January 29, 2025, I served a copy of the within:

6

## DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION SUMMARY JUDGMENT

7

8

on the interested parties in said action addressed as follows:

9

10

Michael Gene McKinney
4397 N. Valentine Avenue
Fresno, CA 93722
*Pro Per Plaintiff*

11

12

**X**      by placing the document(s) listed above for mailing in the United States mail at Fresno, California, in accordance with my employer's ordinary practice for collection and processing of mail and addressed as set forth above.

13

14

15

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 29, 2025, at Fresno, California.

16

17

18

_____
Vincent Soliz
Litigation Paralegal

19

20

21

22

23

24

25

26

27

28

---